LESTER *et al. v.* WRIGHT, insurance commissioner, *et al.*

1. The decree which the plaintiffs in error seek to have reviewed in this case is, in its main features, an interlocutory, administrative order in an equitable action, and is not of such a character that direct exceptions to it will lie under the provisions of the Civil Code, § 6138.

2. It is competent for the superior court, upon application of the insurance commissioner, where the latter has taken charge of the assets and is conducting the business of an insurance company under the provisions of an act of the legislature approved August 19, 1912, entitled an act to provide for the establishment of a department of insurance, etc. (Georgia Laws 1912, pp. 119-143), to direct, upon appropriate petition, the execution of a contract of reinsurance in another company and a contract for the protection of the assets of the company. Applying this ruling to the case in hand, the demurrers to the petition for direction were properly overruled.

AUGUST 31, 1917.

Equitable petition. Before Judge Ellis. Fulton superior court. February 4, 1916.

*. Dorsey, Brewster, Howell & Heyman, C. T. & L. C. Hopkins,* and *W. C. Latimer,* for plaintiffs in error.

*Robert C. & Philip H. Alston, D. W. Blair, Green, Tilson & McKinney, McCallum & Sims, Colquitt & Conyers, Wimbish & Ellis, Austin & Smith, H. E. Riddell, Hines & Jordan, Burton Smith, F. A. Hooper & Son, L. Z. Rosser, Little, Powell, Smith & Goldstein, Jones & Chambers, and White & Lovett, contra.*

BECK, J.   On October 23, 1915, W. A. Wright, as insurance commissioner of the State of Georgia, showing that as such he was in charge of the assets of the Empire Life Insurance Company (hereinafter called the Empire Company), brought his petition for direction.   He alleged that the administration by him was proceeding under the act of the legislature approved August 19, 1912, as amended in 1914, known as the insurance act.   The parties defendant to the petition were the Empire Life Insurance Company and certain named policyholders, who were taken from the holders of the several classes of policies issued by the defendant company, and, in the opinion of the petitioner, were representative of all the policyholders of the company.   The petition set forth in general terms certain valuable assets of the company, consisting of real estate and buildings thereon, and showed that they were heavily encumbered for the improvements put upon them, and that the lienholders were seeking to enforce their liens; also, certain litigation which had been begun against the company, and the fact that since the beginning of the litigation the outstanding insurance had decreased approximately fifty per cent.   It was alleged, that much of the business which had lapsed within twelve months prior to the filing of the litigation could be reinstated; that the assets of the insurance company had so dwindled in value, from the various causes which have affected said company, that in so far as they can be accepted as admitted assets to be carried by the company for the protection of policyholders they will not equal the reserve value of its policies, though it "has a good many assets which are of the kind which can not be called 'admitted assets,' meaning thereby such assets as the laws of the several States permit to be carried as investments by insurance companies for the reserve carried upon policies of life insurance."   Under the conditions surrounding the company the insurance commissioner had determined that it was wise and proper for the business of the company to be reinsured; he had made diligent effort to secure necessary funds to complete certain specified improvements upon certain real es-

tate belonging to the company; and he had been able to procure a contract for the refinancing of a certain building upon which there were liens for a large amount, but the contract was connected with a reinsurance contract. To the petition were attached as exhibits what were called a "reinsurance contract," and a "financial contract" relating to the completion of the building referred to, and to the meeting and discharge of the liens thereon and the creation of other liens. The petition also dealt with the problem of meeting payments due upon existing indebtedness upon a certain other building, which amounted to some $200,000. In January, 1916, an amendment was offered by the insurance commissioner, setting forth that the plan of reinsurance proposed in the original petition was opposed by certain threatened objections; and that the insurance commissioner of the State of Missouri, who had jurisdiction over the proposed reinsuring company, had stated that because of the litigation pending over the Empire Company he thought it unwise to permit the reinsuring company to proceed with the contract; and that consequently there was no longer need of considering this contract, and it was necessary to discontinue the hearing upon the aforementioned petition for direction. It was alleged that petitioner had succeeded in procuring further contracts from the International Life Insurance Company of the State of Missouri, and it had also procured a contract with the last-mentioned company for certain loans; copies of the contracts being attached as exhibits. Representatives of the different classes of policyholders in the Empire Company were named as defendants in this amendment. Petitioner prayed, as in the original petition, for direction; and that the company be given such power and authority as might be necessary to perform every act proper to be done to enable it to enter into the proposed contract of reinsurance and to carry out the terms thereof, and that the petitioner and the Empire Company be authorized to do all things necessary to be done to authorize the execution of such loan contracts as might be accepted, especially the loan upon the building referred to as the Atlanta building. Direction was prayed as to the making of the loan upon certain Augusta property specified; also prayed as to the bond which was on deposit with the treasurer of the State of Georgia; and as to the use of certain surplus money which petitioner desired to use in application upon the policy liabilities of

the Empire Company. The defendant policyholders filed their respective answers to the petition. One of the defendants filed an answer and a cross-petition, setting forth a certain proposed plan for the reinsurance, operation, and administration of the live outstanding insurance policies of the defendant company. This case was consolidated with the case of Brown et al. *v.* Empire Life Insurance Company, which was a case of injunction, receiver, etc. Upon the hearing of the petition for direction evidence was submitted upon the issues made by the petition and the answers; and at the conclusion of the hearing the court rendered a decree authorizing the execution, after certain specified changes therein, of the proposed contracts of reinsurance and the loan proposed by the petitioner in the amendment to the original petition. To the granting of the decree referred to the defendant policyholders excepted. They urged also general and special demurrers to the petition for direction, and excepted to the overruling of the demurrers.

The substance of the decree entered in this case is stated in *Lester* v. *Wright,* 145 *Ga.* 15 (88 S. E. 403). This decree was dated February 4, 1916, and on the same day the court passed an order that counsel have until the first day of March, 1916, to prepare and present a bill of exceptions. A bill of exceptions was presented, the signing of which was deferred until March 15; on which day it was filed, accompanied by pauper affidavits of the plaintiffs in error, under the Civil Code, § 6165. On the same day the presiding judge entered an order declining to grant a supersedeas as a matter of discretion, and holding that no supersedeas resulted as a matter of law. The plaintiffs in error then applied to the Supreme Court for a writ of prohibition and for such other writs and orders as might be appropriate to prevent the carrying into effect of the decree during the pendency of the writ of error. A rule nisi was issued by this court, returnable on March 20, and directed to the insurance commissioner, the International Life Insurance Company, and the judge of the superior court, each of whom answered. That rule was discharged on March 23, this court having on that date passed upon the application for a writ of prohibition. In so doing the court held that "The decree involved in this case is not of such a character as to authorize exception to it as a final decree, with the right in the plaintiffs in error to have a supersedeas by paying the costs and giving

bond under the Civil Code (1910), § 6165, par. 1, or filing an affidavit, in forma pauperis under the third division of that section in lieu of paying the costs and giving bond. In its main features it is an interlocutory, administrative order in an equitable action. If there is any feature of it, such as overruling demurrers to the petition and amended petition, from which direct exception may lie under the Civil Code (1910), § 6138, yet under such exception no right to a supersedeas arises so as to stay further progress in the case in the superior court pending the hearing and decision of the case in this court." Under the ruling embodied in the extract from the decision just referred to, the exceptions to the decree can not be considered and determined. The assignments of error as made in a direct bill of exceptions are not properly before this court for consideration, inasmuch as direct exceptions do not lie to the grant of an interlocutory, administrative order in an equitable action. Such in effect is the ruling already made in this case; and counsel for defendants in error insist that that disposes of all the questions in the case. But we are of the opinion that the ruling upon the demurrers is properly here for decision; and the right decision of this question rests, in view of all the allegations in the petition, upon the determination of the question whether or not, in a proceeding brought under the circumstances set forth in the petition, the court could authorize the execution of a contract of reinsurance in another company and the protection of the assets of the defendant company. In section 2442 (a) of Park's Ann. Code, which is a transcript of a part of section 29 of the act of 1912 (Georgia Laws 1912, pp. 119-143), which was an act to establish a department of insurance, etc., it is provided: "Whenever any domestic life insurance company (a) is insolvent, . . or (e) is found, after an examination, to be in such condition that its further transaction of business will be hazardous to its policyholders, or to its creditors, or to the public, . . the commissioner may . . apply to the circuit court or any judge in the judicial district in which the principal office of such company is located, for an order directing such company to show cause why the commissioner should not take possession of its property and conduct its business, and for such other relief as the nature of the case, the interest of its policyholders, creditors, stockholders or the public may require." And the next section,

2442 (b), taken from the act referred to above, provides for the trying and determining of the issues on the return of the order to show cause, and the granting of the application and directing the commissioner to take possession of property, conduct the business of the company and retain the possession, and for the continuation of the conduct of such business "until, on the application of either the commissioner, the attorney-general representing him or such company, it shall, after a like hearing, appear to the court that the ground for such order directing the commissioner to take possession has been removed, and that the company can properly resume possession of its property and the conduct of its business." And in section 2442 (c) taken from the same act of the legislature, it is provided that "If on like application an order to show cause and after like hearing the court shall order the liquidation of the business of such company, such liquidation shall be made by and under the direction of the commissioner, who may deal with the property and business of such company in his own name as commissioner or in the name of the company as the court may direct, and the commissioner shall be vested by operation of law with title to all the property, contracts, and rights of action of such company, as of the date of the order so directing him to liquidate." The commissioner was, under the provisions of the act of 1912, in possession of the property of the defendant company and conducting its business; and in his opinion it was necessary, to protect the policyholders and the assets of the company, to reinsure the risks then in force, and to protect, in the manner set forth in the petition, the assets of the insurance company. We are of the opinion that it was within the power and authority of the court to whom the application was made to authorize or direct such reinsurance and the execution of the financial contract for the protection of the assets of the company. Considering the connection in which it is used in the section of the act last quoted, we are of the opinion that the term "liquidation," where it is stated that "the court shall order the liquidation of the business of such company," etc., is broad enough in its meaning to authorize a proper contract of reinsurance in another company. It certainly must have been in contemplation of the lawmakers that when an insurance company, on account of loss, or the improper conduct of its business, or litigation over its affairs, fell into such

a condition that it was necessary, under the provisions of the act of 1912, for the insurance commissioner to take charge of its business and assets and to conduct its business, a time might arrive when neither could the commissioner longer conduct the business to the best interest of the policyholders, nor could the company "properly resume possession of its property and the conduct of its business." Under such circumstances reinsurance might be the only means of preventing the absolute destruction and waste of the assets of the company and of the value of its policies. We think, therefore, that the court properly refused to sustain the demurrers and dismiss this petition. The petition was maintainable for the purpose of having granted to petitioner the relief sought, and it was competent for the court to grant the relief. Consequently the court did not err in overruling the general demurrers to the petition; and we do not think the judgment should be reversed and the case sent back for another hearing simply because of imperfection in setting forth certain of the details as to the condition of the company and the necessity for relief.

Whether or not the contract which the court authorized the commissioner to execute was the best that could be devised, or whether it was authorized under the evidence in the case, we do not undertake to decide; for, as we have held, this decree, being in the nature of an administrative order, will not be reviewed under direct exceptions attacking it.

*Judgment affirmed. All the Justices concur.*