HAYDEN v. FRANKLIN LIFE INS. CO.

(Circuit Court of Appeals, Eighth Circuit. March 27, 1905.)

No. 2,075.

1. BENEFIT INSURANCE—EVIDENCE—ARTICLES OF ASSOCIATION AND BY-LAWS.
    In an action on a policy of insurance issued under the assessment plan, it is competent for either party to introduce in evidence the articles of association and by-laws of the company in determining the obligations and rights of the parties.

2. SAME—POLICY CONTRACT ON THE ASSESSMENT PLAN.
    Although the policy, under the head of "Insurance Plan," gives a table of quarterly payments to be made by the assured opposite designated age periods, varying therewith, it does not fix upon it the character of an ordinary life policy contract at a level premium at the time of entry, so as to subject the policy, after default by the assured, to the provisions of the nonforfeiture law of Missouri, where the policy contains the further

provision that "should the Emergency Reserve Fund, or any part thereof, be used as aforesaid, its impairment may be made good by an assessment in addition to the regular Mortuary Call." Such stipulation brings the policy within the designation of one under the assessment plan, as defined by section 7901, Rev. St. Mo. 1899.

3. SAME—EFFECT OF REINSURANCE CONTRACT.

Where a Missouri insurance company issues its policy under the assessment plan conformably to the state statute, and afterwards makes a contract of reinsurance with an Illinois life insurance company, approved by the Superintendent of Insurance of the former state, and the reinsuring company, in writing, assumed the outstanding policy in suit, according to its terms and conditions, and the assured thereafter pays to the reinsurer one or more quarterly premiums, as theretofore to the original assurer, the reinsuring company cannot be held, as under an ordinary life insurance contract, on the level premium plan, notwithstanding the consideration expressed in the reinsurance contract between the companies does not contain the word "assessments."

4. SAME—NET VALUE OF POLICY AT TIME OF FORFEITURE.

A policy of insurance on the assessment plan, where the assured let the policy lapse by refusal and failure, after notice, to pay the quarterly stipulated premium and a call to meet the impairment of the emergency reserve fund, such policy does not have such net value as to bring the policy within the nonforfeiture law of the state. And such policy having expressly provided "that if any premium or any assessment called in accordance with said Insurance Plan shall not be paid on or before the day named in the notice for payment thereof, the contract shall be null and void and of no effect," such default prevents a recovery by the beneficiary under the policy.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

The statute of Missouri (article 3, c. 119, Rev. St. 1899) in force at the time of the incorporation of the Merchants' Life Association authorized the organization of insurance companies on what is popularly known as the "assessment plan." Section 7901 declares that: "Every contract whereby a benefit is to accrue to a person or persons named therein, upon the death or physical disability of a person also named therein, the payment of which said benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts, shall be deemed a contract of insurance upon the assessment plan, and the business involving the issuance of such contracts shall be carried on in this state only by duly organized corporations which shall be subject to the provisions and requirements of this article." Section 7905 of said article declares that insurance companies so organized shall provide for the accumulation of an emergency fund, which shall be not less than the proceeds of one death assessment on all policy or certificate holders, "which fund, together with the income thereon, shall be a trust fund for the payment of death claims or other benefits provided for in said policies or certificates, and shall be invested, etc. * * * If, in any period of six months, the death rate of any such corporation shall be in excess of the annual rate of mortality as shown by the American life tables, it shall be lawful for such corporation to draw out any portion of said securities necessary to meet such excess," etc. Section 7906 recognizes the right of foreign companies to do "insurance on the assessment plan" by complying with certain conditions of the statute.

The Merchants' Life Association was organized under this statute in 1890. Its charter provided, inter alia, that "the purpose for which said company is organized is to carry on a life insurance business on the assessment plan. * * * The fund with which to pay death losses is to be accumulated by assessments on policy holders. * * * An emergency fund shall be accumulated, etc. * * * Assessments upon policy holders in addition to providing

for such emergency fund shall also be for the purpose of paying death losses, etc." The by-laws adopted by the association gave to the executive committee power to levy all premiums and assessments. They provided that all policy holders, and none others, should be members of the association, and at all meetings each member should be entitled to one vote. The aim of the association was to furnish life indemnity, at cost, on the plan hereinafter set forth. They provided that a mortuary call, payable quarterly or annually, to provide a mortuary fund for the payment of death claims, should be according to the following rates at entry: (giving a table of increasing quarterly and annual rates.) They further provided that an emergency reserve fund, to meet death claims in excess of the mortuary fund, should be raised in the same way and time by the payment of 25 per cent. of such mortuary call; and this, together with $3 for annual expenses, should constitute the premium rates for each $1,000 of insurance. Should the emergency fund, or any part thereof, be used as aforesaid, its impairment shall be made good by an assessment in addition to the regular mortuary call. Article 6, § 1, required regular assessment notices to be served. In case of the impairment of the emergency reserve fund from any cause, the same shall be made good by an assessment against each member of the association according to the rates of the mortuary call. Section 2 declared that "if any policy holder shall fail to pay the amount of his or her premium or assessment, the policy shall lapse."

On November 22, 1892, David J. Hayden, a resident of St. Louis, Mo., made application for insurance in said Merchants' Life Association, and a certificate in the sum of $5,000 was issued to him. The policy expressed to be issued "in consideration of all premiums and assessments, as stated in the Insurance Plan endorsed hereon"; and provided that, "if any premium or any assessment called in accordance with said Insurance Plan, shall not be paid on or before the day named in the notice for the payment thereof," the policy should become null and void. The policy also contained this provision: "The Mortuary Call payable quarterly or annually to provide a Mortuary Fund for the payment of death claims shall be according to the following rates at entry." This is followed by a table of entry rates, both quarterly and annually, increasing annually from the ages of 20 to 55; which table is then followed by this provision:

"An Emergency Reserve Fund to meet death-claims in excess of the Mortuary Fund, shall be provided in the same way and at the same time by the payment of 25 per cent of said Mortuary Call; and these, together with three dollars for Annual Expenses, shall constitute the premium rates for each one thousand dollars insurance.

"Should the Emergency Reserve Fund, or any part thereof, be used as aforesaid, its impairment shall be made good by an assessment in addition to the regular Mortuary Call."

The assured made the payment required of him by the policy up to June, 1899, when the defendant in error, the Franklin Life Insurance Company, a corporation of Illinois, reinsured the Merchants' Life Association, being authorized thereto by section 7904, Rev. St. Mo. 1899, which provides that: "No corporation of this state, organized or doing business under the provisions of this article, shall transfer its risks to or re-insure them in any other corporation, unless the contract of transfer or re-insurance is first submitted to and approved by a two-thirds vote of a meeting of the insured, called to consider the same, of which meeting a written or printed notice shall be mailed to each policy or certificate holder, at least ten days before the day fixed for said meeting; and in case said transfer or re-insurance shall be approved, every policy or certificate-holder of said corporation who shall file with the secretary thereof, within five days after said meeting, written notice of his preference to be transferred to some other corporation than that named in the contract, shall be accorded all the rights and privileges in aid of such transfer as would have been accorded under the terms of said contract had he been transferred to the corporation named therein; but no such transfer shall be valid until the terms and conditions shall have been fully submitted to the superintendent of the insurance department, and have been approved by him." This contract of reinsurance was approved by the

State Superintendent of Insurance. The contract of insurance between the two insurance companies was evidenced as follows: On the 18th day of May, 1899, the Franklin Life Insurance Company submitted a written proposition to the Merchants' Life Association, so much of which as is material to this controversy is as follows:

"May 18th, 1899.

"To the Merchants' Life Association—Gentlemen: We make you the following proposition of reinsurance:

"In consideration of the transfer to us of all your money securities, assets, and property of every kind, together with all your books and records, the value of said assets being shown by Exhibits of Assets hereto attached, and of the transfer to us of all your outstanding policies, with all premiums due or to become due thereon, and with your recommendation that the policy holders continue their insurance with us and on the complete substitution (so far as lies in your power) of this company in place and stead of the Merchants' Life Association we will:

"First. Assume outstanding policy contracts, as shown by the two exhibits of policies in force, of date May 13, 1899, hereto attached and all obligations to policy and beneficiaries, thereunder," etc.

On the 19th day of May, 1899, the said Franklin Life Insurance Company sent to the Merchants' Life Association an explanatory note stating: "Referring to the proposition made by us to your association under date of May 18th, 1899, and especially in reference to the clause of the first paragraph relating to 'the transfer to us of all your outstanding policies,' we desire to say that we mean thereby that your officers and directors shall use their best efforts and influence to induce your policy holders to transfer their insurance to our company." It was stipulated between the two companies that a period of 20 days from May 20, 1899, be extended to the policy holders for the expression of a desire to be reinsured in some other company than said Franklin Life Insurance Company, as provided they may do by law. On the 12th day of June, 1899, the Franklin Life Insurance Company, in writing, assumed, "under and according to the terms and conditions thereof, policy or certificate No. 1140, issued by the Merchants' Life Association of the United States Nov. 22nd, 1892, to David J. Hayden of Saint Louis, Mo., for $5,000 payable to Mary F. Hayden and Annie E. Hayden, or the survivor of them, sisters of the insured." Thereafter, on June 15, 1899, the insured paid to the said Franklin Life Insurance Company the payment due on that day, and also on September 15, 1899. The insured thereafter failed and refused to make any further payments, though duly notified, up to the time of his death, which occurred on the 28th day of June, 1901.

This suit was brought by the plaintiff in error, as the beneficiary under the policy, to recover thereon the sum of $5,000 against defendant in error, on the theory that the policy in question was of the nature of an ordinary life insurance policy on the level premium plan, fixed at the date of entry, and that what is known as the "Nonforfeiture Law" of Missouri applies to the policy, which provides that: "No policies of insurance on life hereafter issued by any life insurance company shall, after the payment upon it of three annual premiums, be forfeited or become void by reason of non-payment of premiums thereof, but it shall be subject to the following rules of computation, to-wit: The net value of the policy, when the premium becomes due and is not paid, shall be computed upon the American Experience Table of Mortality, with four and one-half per cent interest, and * * * three-fourths of such net value shall be taken as a net single premium for temporary insurance for the full amount written in the policy, and the term for which said temporary insurance shall be in force shall be determined by the age of the person whose life is insured at the time of default of premium and the assumption of mortality and interest aforesaid"—the claim being that the policy possessed a net value at the time of the death of the assured to extend it beyond that period. The answer, inter alia, alleged that the policy lapsed on the 26th day of November, 1899, and denied that it had any net value sufficient to carry it for the period of 5 years and 184 days, as claimed in the petition. It alleged that the Merchants' Life Association

was a mutual association, organized under the statutes of the state of Missouri on the assessment plan, and that only members of said association should be policy holders. It then pleaded the constitution and by-laws, as hereinbefore set out. It alleged that the policy was indorsed as an insurance plan, and set out the provisions respecting the rates specified for mortuary calls, the rates at the age of entry, and alleged that the rates were increased each year after entry; that in October, 1899, the emergency reserve fund became impaired by reason of its use for the purpose of meeting death claims in excess of the mortuary fund; that on the 26th day of October of that year the defendant made a special assessment to cover said impairment, amounting to $55.20 against said assured; that due notice thereof was given to him, said assessment becoming due on the 26th of November, 1899; that his failure and refusal to pay said assessment caused said policy to lapse; that the regular quarterly assessment thereon of $25.30 became payable December 15, 1899, of which due notice was given to the assured November 13, 1899; that his failure to pay said assessment on or before December 15, 1899, forfeited said policy; that the net single premium for temporary insurance for the full amount of said policy from the date of lapse to the date of death was in excess of the net value of the policy, and that said assured was asked to restore said policy by making payment of said assessment, which he refused to do. The plaintiff tendered the general issue in the reply. The testimony of actuaries, as insurance experts, was introduced on the question as to whether or not said policy had any net value at the time of the death of the assured. The parties submitted a written stipulation as to certain facts involved, which concludes as follows: "It is agreed between the parties that the primary question for determination is whether upon the foregoing facts the non-forfeiture law of Missouri is applicable to this case; that if not applicable defendant is entitled to judgment; that if said statute is applicable then the further question is to be determined whether the policy in suit has any net value under such statute and what that value is, and whether three-fourths of such net value was sufficient to carry said policy under the provisions of said non-forfeiture statute from the date when said policy lapsed to the date of the death of said David J. Hayden. If said non-forfeiture law is applicable and said policy had such net value, that three-fourths thereof would under the statute continue said policy in force from the date of lapse until the date of death, then the plaintiff is entitled to judgment, unless the court finds for defendant on the second defense pleaded in the amended answer. If the policy had no net value, or if three-fourths thereof was insufficient to carry said policy from date of lapse to date of death, then defendant is entitled to judgment, and on the question of the character of the policy and its value, either party is entitled to introduce evidence." At the conclusion of the evidence, under direction of the court, the jury returned a verdict for the defendant. To reverse the judgment entered thereon, the plaintiff below prosecutes this writ of error.

F. H. Sullivan (P. T. Barrett, George M. Block, and Charles Erd, on the brief), for plaintiff in error.

James C. Jones (Jones, Jones & Hocker, on the brief), for defendant in error.

Before SANBORN and VAN DEVANTER, Circuit Judges, and PHILIPS, District Judge.

PHILIPS, District Judge, after stating the case as above, delivered the opinion of the court.

The first error assigned by the plaintiff is predicated on the action of the trial court in admitting in evidence the articles of association and by-laws of the Merchants' Life Association. The objections to the former are that they are not parts of the contract of insurance, and the defendant's liability is to be determined by the terms of the original

policy, which does not refer to the charter. A like objection was interposed to the admission in evidence of the by-laws.

The principal cases cited in support of these objections are McDonald v. Life Ass'n, 154 Mo. 628, 55 S. W. 999, Elliott v. Life Ass'n, 76 Mo. App. 566, and Taylor v. Ætna Insurance Company, 13 Gray (Mass.) 438.

In the McDonald Case the insurance company, an Iowa corporation, being authorized to do business on the "assessment plan" in the state of Missouri, in order to show that the policy in suit was issued on the assessment plan, offered in evidence its articles of incorporation and by-laws. Of this the court said:

"The policy did not refer in any manner to the articles of incorporation or to the by-laws, and hence they constitute no part of the contract. Elliott v. Ins. Co., 76 Mo. App. 566. Nor were they pleaded in any manner, and therefore they were inadmissible."

The case of Elliott v. Insurance Company, cited by the Supreme Court, does not set out in detail the policy in question. It is inferable, however, from the recitations in the opinion, that there was nothing on the face of the policy or the reverse side thereof to indicate that it was other than an ordinary life insurance policy. The articles of association and by-laws were excluded on the ground that the contract of insurance did not make them a part of the contract, and they were not referred to therein.

This ruling, evidently, was based upon what was said by Metcalf, J., in Taylor v. Ætna Life Insurance Company, 13 Gray, 434, 438. The policy in question in that case was an ordinary life insurance contract. On the question of proofs of loss, in order to show that the contract of insurance had not been complied with, the defendant put in evidence a pamphlet issued by the insurance company, usually delivered to its policy holders, which required that a certificate of death should be furnished from the attending physician. This was excluded, on the ground that the policy did not embody or refer to any by-law, requisition, or understanding of the defendant's as to the character of proof required of the death of the assured. "He is bound only by the policy itself; that is, to furnish 'due proof' of the death. If the defendants would have bound the plaintiff by their by-laws, etc., they should have made the policy, in terms, subject to those by-laws, or in some way have made them a part of the contract contained in the policy." Citing Kingsley v. New England Mutual Fire Insurance Company, 8 Cush. 393, 403.

The policy under review here, after referring on the reverse side to the mortuary call, payable quarterly or annually, to provide a mortuary fund for the payment of death claims, etc., expressly provides that "should the Emergency Reserve Fund, or any part thereof, be used as aforesaid, its impairment shall be made good by an assessment in addition to the regular Mortuary Call." This of itself was sufficient to advise the policy holder that he was amenable to an assessment in addition to the regular mortuary call, which characterized its policy as being on the "assessment plan." As the manner of making such assessments was not pointed out on the face of the policy, and such assessments in their very nature being mutual among the associated members,

the law refers the policy holder to the articles of association and by-laws as incident to such policy contracts. It is the generally recognized rule of law in respect of all mutual insurance companies that the charter and by-laws are a part of the insurance contract, and as binding upon the assured as the conditions of the policy itself. To them the constituent members must measurably look to discover their duties and obligations. 3 Am. & Eng. Enc. of Law (2d Ed.) 1081; 16 Am. & Eng. Enc. of Law, 867. Hence it has come to be regarded as the general American rule that the provisions of the stipulated articles and by-laws of such associations are elements of the contract of insurance. As said by the Supreme Court of Indiana, in Supreme Lodge v. Knight, 117 Ind. 489, 20 N. E. 479, 3 L. R. A. 409:

"They are factors that cannot be disregarded. That they have this effect, all who become members of the association must know. A person who enters an association must acquaint himself with its laws, for they contribute to the admeasurement of his rights, his duties, and his liabilities. It is not one by-law or some by-laws of which the member must take notice, for he must take notice of all which affect his rights or interests."

In Simeral v. Dubuque Mutual, etc., 18 Iowa, 319–322, the court said:

"This policy was issued by a 'mutual insurance company,' and the assured, becoming a member by virtue of his insurance, was bound to know the articles of association and by-laws thereof."

The Supreme Court of Georgia, in Barbot v. Mutual Reserve Fund Life Association (Ga.) 28 S. E. 498, 503, said:

"This being a mutual association controlled by its members, and each bearing his share of the burdens for the benefit of the whole membership, the contract of a member is different from an ordinary life insurance policy. The latter is held to be the contract which determines the rights of the company and the insured, and to be the whole of the contract; but inasmuch as both the benefits and the burdens in a mutual society are to be equal and bearing on all its members alike, it is well settled that the certificate of membership is only a part of the written evidence of the contract, and that in such a society the charter or constitution and by-laws in force at the time of the admission of a member are terms of an executory contract, and that by entering the society the member assents to all such terms, and that they each become a part of the contract of insurance, whether they are incorporated in or referred to by the certificate of membership or not."

See, also, May on Insurance, § 552; Supreme Commandery v. Ainsworth, 71 Ala. 436, 443, 46 Am. Rep. 332; Bliss on Life Insurance, § 426, et seq.; May v. New York Safety Reserve Fund Soc., 13 N. Y. St. Rep. 66; In re Equitable Reserve Fund Life Association, 131 N. Y. 354, 368, 30 N. E. 114; Sulz v. Mutual Reserve Fund Life Association, 145 N. Y. 563–568, 40 N. E. 242, 28 L. R. A. 379; Woodfin v. Insurance Company, 51 N. C. 558.

Counsel for plaintiff in error in their brief say:

"The original contract of insurance, while providing for fixed and level premiums, also provided for future assessments at uncertain times and in uncertain amounts."

This of itself is a concession, in contemplation of law, that the insurance company was a mutual association on the "assessment plan."

The next contention on behalf of plaintiff in error is that the stipulat-

ed quarterly payments, under the head of "Insurance Plan" on the policy, were intended to remain at the level amount specified opposite the age of the assured at the time he entered the association, and that they were so different from assessments the association was authorized to make when any deficiency existed rendering them necessary as to bring the policy within what is known as the "Nonforfeiture Law" of the state of Missouri. On the other hand, the contention of defendant's counsel is that the specified quarterly payments aforesaid "might be increased, as the member's age increased, to the amount shown in the table opposite each succeeding age"; in other words, that the association was authorized to collect from the assured payments varying and increasing in amount from year to year. It is not deemed essential to a correct determination of this case to decide the relative force of these contentions. The policy itself, as already stated, provides that "should the Emergency Reserve Fund, or any part thereof, be used as aforesaid, its impairment shall be made good by an assessment in addition to the regular Mortuary Call." And counsel for plaintiff in error in his argument, in effect, concedes that, under the policy issued by the Merchants' Life Association, the company had the right, conditioned upon any impairment of the fund, or if the experience of the association justified it, to levy any assessment upon the policy holders for such amounts as its mortuary experience demonstrated to be requisite. Such is the express provision of the charter. All this being conceded, as it must be, the stipulated payments at definite divisional age periods do not have the effect to designate it as an ordinary life policy on the level premium plan, and to destroy its quality as a policy on the "assessment plan." The statute itself, under which the insurance company was organized, so speaks. It declares (section 7901) that every contract whereby a benefit is to accrue to a person upon the death of the person named therein, "the payment of which said benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts, shall be deemed a contract of insurance upon the assessment plan."

This view of such a policy was taken by Judge Adams in Haydel v. Mutual Reserve Fund Life Association (C. C.) 98 Fed. 200. While the policy under consideration there was not wholly similar to this, it was sufficiently so to present, in terms, the like contention made respecting the effect of a definitely reserved premium payable at specified age designations. In determining whether or not the policy was on the assessment plan, he said:

"It is assessment insurance where the benefit to be paid is dependent upon the collection of such assessments as may be necessary for paying the amounts insured. In other words, it is assessment insurance if payments to be made by the insured are not fixed—unalterably fixed—by the contract. On the contrary, an old-line policy is a contract where the amount to be paid by the insured is fixed, the premiums to be paid are unalterable, and the liability incurred by the defendant company is also fixed, definite, and unchangeable."

On review of this case (104 Fed. 718, 44 C. C. A. 169), Judge Thayer, speaking for the court, said:

"While the premium at first reserved is a definite sum, yet by further provisions the executive committee of the company can require the holders of such policies to pay a greater or less sum than that stipulated to be paid on

the face of the policies, if the condition of the defendant company at any time renders such action necessary. * * * When all the provisions of the contract are considered, it seems to retain all the essential features of assessment insurance."

This ruling has been approved and followed by the New York Court of Appeals in Crosby v. Mutual Reserve (Sup.) 78 N. Y. Supp. 237.

In Hanford v. Massachusetts Benefit Association, 122 Mo. 50, 26 S. W. 680, the late Judge Black expressed for the court the same view of the policy contract. Speaking of the contention that the policy was a regular old-line premium policy, and therefore not within the plan marked out by the statute, he said:

"According to the first clause of the seventh condition of the policy, the member must make a bimonthly payment at fixed and definite dates during his life, and the amount to be paid bimonthly is also fixed by the table of rates. Thus far these policies are premium policies, for it does not make these fixed rates, payable at specified dates, assessments, to call them by that name. But it is also provided in and by the policies that the board of directors may call for and require the payment of a different amount by giving special notice, and the amount called for may be based upon the current age of the member and the mortality experience of the association. The statute is broad enough to allow assessments to be based on the age of the member, and, for frequency of the calls, on the mortality experience of the particular association. Our statute calls for an emergency fund, and so do these policies. We think these contracts come within the statute, and are contracts of insurance on the assessment plan, as that plan is defined by the statute. The articles of association and the by-laws of the defendant are not before us, and, from the facts disclosed by this record, we can only say these policies are assessment-plan contracts."

In the later case of Elliott v. The Des Moines Life Association, 163 Mo. 132, 63 S. W. 400, Judge Gantt, discussing the policy certificate, which required certain definite, estimated amounts to be paid, but which further provided that in case the death rate exceeds the estimated rates the association would pay the deficiency from the emergency or reserve fund until exhausted, when additional premiums might be levied pro rata by the executive board to meet such deficiency, held that it brought the policy within the language and meaning of the statute—

"Which provides that, if the payment of the benefit is in any manner or degree dependent upon the collection of an assessment upon persons holding similar contracts, it shall be deemed a contract of insurance upon the assessment plan. While the amount of the benefit is absolutely fixed, and the assessments are definite sums estimated to be sufficient to realize the amount promised, yet it is obvious that in this safety clause is a provision by which an extra assessment or assessments may be made. * * * It seems to us this policy meets every requirement of the statute as to insurance on the assessment plan."

The same rule of construction is announced in the still later case of Williams v. St. Louis Life Insurance Company, 97 Mo. App. 449, 71 S. W. 377.

It is therefore little less than academic to follow the refinement of learned counsel in his contention that the stipulated payments by the contract became fixed and level at the amount he paid when he entered the association, for the controlling authority is that the right, having been reserved by the insurer to levy assessments on

policy holders to meet any impairment of its mortuary fund, and its mortuary experience, rendered variable the payments due by the assured. They were therefore subject to change at the will of the governing board of the association. This fixed the character of the contract as an assessment contract.

Such being the contract when entered into between the Merchants' Life Association and the assured, it continued to be such to the time of the reinsurance by the defendant in error. Counsel for plaintiff in error is therefore forced into the position of insisting that the reinsurance contract transformed the relation between the assured and the reinsurer into that of a simple life policy on the level premium plan. To warrant such a complete metamorphosis of the contract, we should naturally expect to find outright spoken terms in the transforming instrument. Instead of this, the position is sought to be maintained by subtle reasoning—a strained construction of a disjected member of the contract of reinsurance. And, what is still more revolutionary, this assumption involves the assertion that this new contract acts retrospectively, so as to give to the policy, which up to the moment of the reinsurance had no value whatever, a net value of $761.70, a sum much in excess of what the assured paid by way of premiums or assessments covering the entire seven years the policy was in force. This result can only be worked out by giving to the reinsurance contract relation, back to the inception of the original insurance contract, a position which refutes the idea of any legal difference between the two contracts.

The contention that the assessment feature of the original policy contract was entirely eliminated by the reinsurance contract is based on the opening clause of the proposition submitted by the Franklin Life Insurance Company to the Merchants' Life Association, in which the word "assessments" was not included among the considerations; that, as it did recite "all the premiums due or to become due," the intendment was that the Franklin Life Insurance Company should take only as an ordinary life insurance company on the level premium plan. It is of minor consideration in determining this question what were the enumerated considerations as between the two insurance companies for the transfer. The obligatory part of the contract expressly required that the Franklin Life Insurance Company should "assume the outstanding policy contracts as shown by the two exhibits of the policies in force, of date May 13, 1899, hereto attached, and all obligations to policy holders and beneficiaries thereunder." More than this, after according to the policy holders 20 days after notice in which to determine whether or not they would accept or insure in other companies, on June 12, 1899, the company made its written assumption of said Hayden policy, as follows: "Franklin Life Insurance Company of Springfield, Ill., hereby assumes, under and according to the terms and conditions thereof, policy, etc., issued by the Merchants' Life Association of the United States Nov. 22nd, 1892, to David J. Hayden." By every legal intendment the reinsuring company took over the existing contractual obligations and rights of the Merchants' Life Association inhering in the outstanding poli-

cies as they existed at the time of the consummation of the reinsurance agreement, no more and ·no less. The assured thereafter recognized the reinsurance agreement by paying to the reinsurer specified quarterly mortuary funds as theretofore. The mutual obligations and rights of the reinsurer and the assured being measured and controlled "according to the terms and conditions of policy No. 1140, issued to said David J. Hayden," which was concededly on the assessment plan, the statute relating to assessment insurance companies exempted it from "any other provisions or requirements of the general insurance laws of this state." Section 7910.

As the nonforfeiture law of Missouri (section 7897) is a part of the general insurance law of the state, it does not apply to this policy. Mutual Reserve Life Ins. Co. v. Roth, 122 Fed. 853, 59 C. C. A. 63; Hanford v. Mass. Ben. Ass'n, 122 Mo. 50, 26 S. W. 680; Whitmore v. Supreme Lodge, 100 Mo. 36–47, 13 S. W. 495; Haynie v. Knights Templars, 139 Mo. 416, 41 S. W. 461.

This policy lapsed a year and more before the assured died, at which time it had no net value under the assessment plan. The policy having expressly provided "that if any premium or any assessment called in accordance with said Insurance Plan, shall not be paid on or before the day named in the notice for the payment thereof, this contract shall be null and void and of no effect," and such default having been made by the assured, the Circuit Court did not err in directing a verdict for the defendant. Its judgment, therefore, must be affirmed.