9934.   SPRATLING, executrix, *v.* INTERNATIONAL LIFE INSURANCE
COMPANY.

JENKINS, J.   1.   Under the provisions of the "automatically non-forfeit-
    able" clause of the original policy of life insurance here involved, the
    accrued loan value, until consumed, would operate to continue the policy
    in force as fully and completely as though ˙the premiums had been
    paid by the insured from funds derived from other sources.   *Perkins*
    v. *Empire Life-Insurance Co.,* 17 *Ga. App.* 658, 659 (87 S. E. 1094).
2.   Liability under the terms of a policy of life insurance, when assumed
    by another company, must be taken and construed subject to such
    "exemptions, modifications, and limitations" as are imposed by the
    contract of reinsurance.   1 Joyce on Insurance, § 131-A; Fireman's
    Fund Insurance Co. *v.* Aachen & Munich Fire Insurance Co., 2 Cal.
    App. 690 (84 Pac. 253).
3.   Where the insurance commissioner of this State, acting under the

39

authority of the superior court and in behalf of an insolvent insurer, its creditors, and its policyholders (*Lester* v. *Wright*, 147 *Ga.* 242, 93 S. E. 408), enters into a contract of reinsurance with another company, under which agreement such of the assets of the original insurer as the court may determine belong to the policyholders, on account of the reserve liability under the policies, are to be taken over by the reinsurer after being first liquated by the insurance commissioner, and where, in view of the existing uncertainty as to the extent of the original insurer's insolvency, the reinsuring company, under the terms of the agreement, reserves unto itself a lien charged against the policies of insurance thus assumed by it, in an amount sufficient to equal the full reserve liability thereon, and where the contract of reinsurance specifically provides that "Cash loans and cash surrender values shall not be available to the policyholders of [the original insurer] for a period of one year from the date of this contract, nor thereafter except to the extent of the amounts turned over to [the reinsurer] for the credit of each policy, plus the net additions to reserve from premiums paid by the policyholder in cash, diminished by the surrender charge hereinafter designated, until said liens shall be fully liquidated," if the insured, within the period of one year from the date of the contract of reinsurance, allows his policy to lapse on account of non-payment of premiums, the loan value which accrued under the original policy would not be available for the purpose of automatically extending the insurance as a claim against the reinsuring company under the terms of the agreement thus entered into by it.

4. The rule would not be altered by the fact that under another provision of the contract the reinsurer agreed that the amount of such "liens," representing the reserve liability under the policies, should be insured in its own company, and had guaranteed that the premiums for such additional insurance should be taken care of from the profits accruing in its management of such reinsured contracts. Without this provision, the effect of the reinsuring contract would have been the primary assumption by the new company of the face of the original policies, less the amount of the reserve liabilities represented by the "liens" set up in its favor; but under the obligation thus made, the reinsuring company became at once liable, in accordance with the terms of its agreement, for the full face value of the original policy, without any diminution to the extent and in the amount of the reserve liability which had accrued under the old policies—tentatively assumed to be lost on account of the insolvency of the original company. Under the quoted terms of the reinsuring contract, however, the amount of the reserve liability which accrued under the old policies and which might in any event actually be intact for future delivery to the new company for the benefit of such policyholders was not to be to any extent available to policyholders either as loan value or as cash surrender value for a period of one year, and could be available then only to the extent of the amount thus actually turned over to it by the insurance commissioner. The judge did not err in sustaining the demurrer to the petition.

*Judgment affirmed. Wade, C. J., and Luke, J., concur.*

DECIDED APRIL 19, 1919.

Action on insurance policy; from Fulton superior court—Judge Pendleton. June 18, 1918.

The reinsurance contract referred to in the decision is as follows:

"This contract of reinsurance, this day made and entered into by and between the International Life Insurance Company, of St. Louis, Missouri, hereinafter called the International, and The Empire Life Insurance Company, of Atlanta, Georgia, hereinafter called the Empire, witnesseth:

"1. The International hereby assumes and reinsures all of the outstanding policies or contracts of life insurance of the Empire, and agrees, subject to the exemptions, modifications and limitations hereinafter stated, to carry out the terms and conditions thereof and to pay all liability arising thereon as fully and completely as the Empire would have been bound to do but for this contract. The International assumes no liability whatever except on the outstanding policies or contracts of life insurance of the Empire as limited and modified herein.

"2. The reserve value of the policies shall be ascertained by an actuary or actuaries designated by the Insurance Commissioner of Georgia and the International. The basis of calculation to determine the amount of the reserve to be turned over by the Empire to the International and the net premiums upon which expense loading hereafter referred to shall be calculated shall be as follows:

"One year full preliminary term based on the American Experience Table of Mortality at $3\frac{1}{2}\%$ interest for all ordinary life, and twenty-payment life forms; modified preliminary term (ordinary life basis) on the American Experience Table of Mortality at $3\frac{1}{2}\%$ interest for all policies other than the ordinary life, twenty-payment life, paid-up and extended insurance and term policies; and the net level premium reserve on the American Experience Table of Mortality at $3\frac{1}{2}\%$ interest for paid-up, extended insurance, term policies and return premium provisions. It is the intent of the contracting parties to establish the foregoing described basis as a basis of reserve and net premiums on which policies of the Empire shall be valued in any audit or valuation contemplated under this contract, and to establish such reserve basis as the basis of surrender values of such policies of the said Empire reinsured hereunder by the International as provided by

their terms for a surrender value in cash or valuable consideration greater than provided by the above basis of valuation, less the surrender charges hereinafter provided, and the foregoing basis is by the execution of this contract established and made conclusive upon policyholders of the Empire, except that in no instance shall the values originally provided be hereby increased. The reserve value on every policy shall be ascertained, which reserve, together with future net premiums, shall be sufficient to purchase all the benefits guaranteed by such policies on the basis described above. The reserve for disability benefits, if any, shall be valued on McAdam's Tables of Total Disability Benefits.

"3. The Empire does hereby sell, assign and transfer unto the International all of its insurance business, together with the right to collect from the policyholders of the Empire all premiums which now are or may hereafter become due by virtue of any contract of insurance entered into by the Empire, and all policy contracts, applications, medical examination reports, all books of the company and all other documents and papers whatsoever affecting or appertaining to the policy contracts hereby assumed by the International, and all filing cases, safes, and containers in which the same are filed, systematically arranged, and agrees to co-operate with and aid the International in renewing and continuing to renew all business assumed by it and in reinstating all business standing lapsed on the books of the Empire, but without pecuniary liability therefor on the part of the Empire except as herein provided. The International will, in good faith, undertake without delay the reinstatement of all policies of the Empire lapsed within two years prior to date hereof, and to retain the insurance now on the books of said Empire. Insurance reinstated hereunder shall not be considered for a period of one year after date of reinstatement in ascertaining the profits accruing to the Empire as hereinafter provided. The International may issue its special reinstatement policy to applicants therefor whose policies have been lapsed for more than two years, and the Empire shall not participate in profits arising therefrom.

"4. A lien shall be charged against the policies or contracts of insurance assumed by the International in an amount sufficient to equal the reserve liability. The amount of the liens to be charged against individual policies of the Empire shall be their respective

shares of the total liabilities assumed by the International Life Insurance Company hereunder, and shall be determined on the basis of their respective means reserves as of the date of this contract. Such liens shall bear interest annually, at the rate of 5% per annum, and shall be insured in the International without medical examination or other evidence of the insurability of the policyholder, at attained age, at one-year term rates (American Experience 3¼%) plus a loading of 7½%. Insurance shall not be carried on any liens other than those created by this contract; nor shall interest payments from profits payable to the Empire, as provided herein, be made on any other liens than those created hereby; nor shall any liens, except as expressly created herein, be liquidated as herein provided. Premium notes, existing policy loans and liens, and net deferred premiums, shall be received on account of the reserve liability under the individual policies to the extent of their reserve value at the end of the current policy year.

"5. All of the assets and property of the Empire (excepting the insurance business and premiums which will become due therefor and premium notes, policy loans and deferred premiums) shall remain in the custody and under the control of the insurance department of the State of Georgia and shall be managed, controlled and administered by said insurance [department] in trust under the direction of the superior court of Fulton county, Georgia. That part of the income, as well as the corpus of said assets and property which said court may determine belongs to the policyholders of the Empire on account of the reversed liability on said policies, whose policies have been assumed by the International hereunder, shall, when reduced to money or to assets satisfactory to the International and acceptable under the statutes of Missouri as admitted assets, be delivered by the Insurance Commissioner of Georgia to the International. When so delivered, the International shall apply the same as hereinafter provided.

"6. The International shall keep accurate books of account showing the premiums received by it for renewal on business of the Empire assumed by it under this contract, including such lapsed business as may be reinstated for the account of the said Empire under the terms of this contract, showing the dates and amounts of said payments, and showing any and all conversions of said policy contracts and lapses and reinstatements thereof. The

Empire and the Insurance Commissioner of Georgia, his successors in office, or any duly accredited representative, shall have the right at all reasonable times to examine at the home office of the International said books of account and all documents and papers relating thereto, but such examination shall be conducted in such manner as not to interfere with the proper conduct of business. It shall be the duty of the said Insurance Commissioner to make an audit on the first anniversary of this contract, and annually thereafter to determine the amount of liens then outstanding against the several policies of the Empire, and their ratio per cent. to the amount charged against individual policies. The ratio so determined shall be used as a standard for the ensuing period of one year in determining the rights of the policyholders of the Empire to surrender values. Expense of audit to be charged against amounts accruing to the Empire as profits hereunder.

"7. The International shall ascertain annually the mortality savings, gains from surrender policies, the amount of expense loading in excess of 9%of the gross premiums collected on the Empire policies, and the sum of such amounts shall constitute the profits accruing to the Empire hereunder. From this sum shall be deducted, first, the interest on the liens herein provided; second, the premium for the lien insurance, and, third, an amount equal to the tabular provision for mortality (on the basis of the American Experience Table at $3\frac{1}{2}\%$) for the period for which the International shall have been at risk on any policy that shall lapse before as much as one semi-annual premium thereon shall have been paid in cash to the International. If the amount otherwise payable to the Empire is not at least equal to the said interest on the liens, the premiums for the lien insurance, and during the first year equal to the additional amount of the tabular mortality on policies that lapse before as much as one semi-annual premium is paid, then the difference shall constitute a credit on the profits otherwise due the Empire at the end of subsequent years until fully liquidated.

"The profits accruing to the Empire, less the deductions authorized under this contract, shall be used as may hereafter be determined by the Insurance Commissioner of the State of Georgia, or his successors in office, with the concurrence of the superior court of Fulton county, Georgia, which said court has jurisdiction over

said Empire. The International, to the extent hereinafter mentioned, guarantees that the mortality savings, gains from surrender policies, and the amount of expense loading in excess of 9% of the gross premiums collected on the Empire policies as herein provided, before the deductions in this contract authorized have been made, shall be not less than twenty thousand dollars ($20,000.00) per year for a period of seven years. Should the said profits in any one year amount to less than twenty thousand dollars ($20,000.00), the International will apply the amounts provided hereunder to be retained by it to cover the expense of and compensation for handling the business. This account shall be taken at the end of each year of the contract. In the event the International is required at the end of any one year to make up a deficiency in order to bring the profits to the Empire up to the said sum of twenty thousand dollars ($20,000.00), and in the event there is an excess earning in any succeeding year, the amount which has been paid to the Empire may be taken out of excess earnings for succeeding year or years.

"It is not intended hereby to obligate the International to pay the said sum of twenty thousand dollars ($20,000.00) except out of the amounts accruing to it as herein provided as the expense of and compensation for handling the business, but all of said amounts may be absorbed if it be necessary to make the said payment of twenty thousand dollars ($20,000.00).

"8. The profits hereinbefore provided to be paid to the Empire shall be paid for a period of seven (7) years to the said Empire, or for its account as may be determined by the Insurance Commissioner of the State of Georgia, or his successors in office, and approved by the decree of the superior court of Fulton county, Georgia.

"9. If the lien herein established has not been entirely liquidated at the end of seven years from the date this reinsurance contract becomes effective, the remainder thereof shall be carried as a lien on said Empire policies; provided that each holder of an Empire policy may have his insurance and premium reduced to the amount corresponding to the amount of the then validated reserve applicable thereto.

"10. Cash loans and cash surrender values shall not be available to the policyholders of the Empire for a period of one year

from the date of this contract, nor thereafter except to the extent of the amounts turned over to the International for the credit of each policy, plus the net additions to reserve from premiums paid by the policyholder in cash, diminished by the surrender charge hereinafter designated, until said liens shall be fully liquidated. So long as said liens or any part thereof remain unsatisfied, a surrender charge of two per cent. of the face of the policies shall be enforced against all policies. This provision is not intended to impose a surrender charge of two per cent. in addition to the surrender charge already provided for in said policies, but to make such a charge in the case of policies which provide no surrender charge, and to increase the charge in policies which provide for a less surrender charge, to a sufficient amount to make a surrender charge of two per cent. After said liens are fully liquidated, a surrender charge not exceeding one and one half per cent. of the full amount of each policy may, at the option of the International, be exacted from surrendering policyholders.

"11.   No dividends or profits shall be apportioned or paid to the holders of participating policies of the Empire until the liens established by this contract are fully liquidated as contemplated herein, nor until the expiration of the seven-year period mentioned above. From and after the expiration of such period contemplated herein the International shall annually apportion to the policies of the Empire remaining in force the amounts accruing to their credit from said Empire policies, and shall pay such amounts in accordance with the terms of the several policy contracts of the Empire.

"12.   The parties hereto agree that they will execute such other and further agreements, writings, or undertakings necessary to be executed in order to give full force and effect to this instrument and to another contemporaneous instrument, providing for certain financial arrangements.

"13.   This contract is made subject to the terms of section 6936 of the Revised Statutes of Missouri, 1909, and amendments thereto, authorizing and governing reinsurance contracts between insurance companies, and is to take effect as herein drawn, or with such modifications as may be made by the commission provided for [in] such statutes, at noon on the day upon which said contract as herein drawn, or as so modified by said commission, shall be

approved by said commission; provided that the contract shall not be binding upon the parties hereto until authorized by the superior court of Fulton county, Georgia, which is now exercising jurisdiction over the said Empire under the statutes and laws of the State of Georgia in such cases made and provided.

"14. This contract, and another of even date providing for financial arrangements, are companion contracts, and it is not contemplated that the financial contract shall become binding upon the International unless this contract is executed, delivered, and put in force by the authorities hereinabove referred to.

"15. This contract having been approved by the superior court of Fulton county, Georgia, and by the board organized under the insurance laws of the State of Missouri as is contemplated in the foregoing provisions herein, same is now finally executed and delivered, to have full force and effect from the date and hour of delivery, which date and hour is endorsed hereon, said endorsement being signed on behalf of the insurance department and on behalf of the International Life Insurance Company.

"In witness whereof the International Life Insurance Company, in pursuance of proper corporate authority, has hereunto set its hand and affixed its seal, and the Empire Life Insurance Company acting through the insurance department of the State of Georgia, has hereunto set its hand and affixed its seal, all of which is done in duplicate, this the 17th day of March, 1916.

　　　　　"International Life Insurance Company　(Seal),
　　　　　　　　　　"by Massey Wilson, President.
　　　　　"The Empire Life Insurance Company　(Seal),
　　　　　　　　　　"by Wm. A. Wright,
"Insurance Commissioner of Georgia, and as such in charge of the assets of the Empire Life Insurance Company.

　　　　　　　"Wm. A. Wright　(Seal),
　　　　　"Insurance Commissioner of the State of Georgia."

*Jones & Chambers,* for plaintiff.

*Robert C. & Philip H. Alston,* for defendant.