(104 So. 425)

**EMPIRE LIFE INS. CO. et al. v. LANDMAN.**
**(8 Div. 726.)**

(Supreme Court of Alabama. April 16, 1925. Rehearing Denied May 28, 1925.)

1. **Insurance ⊗⇒679—A third person may sue upon contract made for his benefit, if benefit became part of consideration.**

A third person may sue upon a contract made for his benefit, as a reinsurance contract, if such benefit became a part of the consideration of the contract; that is, the beneficiary may elect to accept the benefit therein promised and secured to him, and his assent for acceptance may be manifested by resort to an appropriate remedy, at law or in equity, for the enforcement of such provision of the contract inuring to his benefit.

2. **Insurance. ⊗⇒679—Liability imposed by contract of reinsurance, sued upon by assured, to be construed subject to exemptions, modifications, and limitations stipulated in it.**

Liability imposed by contract of reinsurance, sued upon by assured, is to be construed subject to exemptions, modifications, and limitations stipulated in it, though no payment of premiums has been made by assured to reinsurer.

3. **Insurance ⊗⇒364—Original insurer, having reinsured policy as to which insured permitted premiums to lapse, liable for amount of reinsurance, if policy in force under extended or automatic premium loan clause.**

Original insurer, which reinsured policy as to which insured permitted premiums to lapse, is liable for amount of reinsurance if policy was in force under extended insurance or under automatic premium loan clause.

4. **Insurance ⊗⇒676—Insurer could not, without policy holder's consent, make contract of reinsurance which abrogated rights of insured against original insurer.**

Insurer could not, without policy holder's knowledge or consent, make contract of reinsurance which abrogated rights of insured against original insurer.

5. **Insurance ⊗⇒684—Foreign state insurance commissioner, liquidating affairs of insurer, could contract with reinsurer as to changes in terms of original policies, as merely binding contracting parties.**

Foreign state insurance commissioner, liquidating affairs of insurer, could contract with reinsurer to make changes in terms of original policies, as merely binding contracting parties.

6. **Insurance ⊗⇒679—Contract of insurance accepted by beneficiary is to be liberally construed in favor of assured.**

Where the beneficiary by suit accepts a contract of reinsurance made for his benefit, such contract is to be liberally construed in favor of the assured.

---

⊗⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Insurance ☞686—Reinsurer, sued on reinsured policy on which assured permitted premiums to lapse, held required to plead facts defeating or affecting reinsurance contract.**

In a suit against a reinsurer of a policy, as to which deceased insured permitted premiums to lapse, but which, under the automatically nonforfeitable clause policy, had sufficient time to cover the period from date of nonpayment of premium to death of insured, it was incumbent upon defendant, by its pleadings and defensive matter,. to set up its calculations and allowances on the policy, which established the fact that assured had forfeited his rights under the policy, and that, as to it, the policy had lapsed before assured's death, or that it was not embraced within the contract of reinsurance.

**8. Insurance ☞686—Bill against reinsurer to recover on policy on which premiums lapsed, but containing automatically nonforfeitable clause, held not subject to demurrer.**

Bill against reinsurer on policy reinsured, as to which insured allowed premiums to lapse, but which contained an automatically nonforfeitable clause under which there was sufficient time to run to cover the period from nonpayment of premium to the death of insured, *held* not demurrable, but to call for statement of account and determination of reserve fund.

**9. Insurance ☞686—Office of demurrer stated.**

In a bill to collect on life policy based on contract of reinsurance, effected by defendant with original codefendant insurer, demurrer admitted allegations of bill to be true, and its only office was to test sufficiency of averments of bill to state a case against defendants, not to negative defenses which defendants must rely upon under the reinsurance contract assented to by beneficiary by institution of suit against defendant reinsurer.

Appeal from Circuit Court, Madison County; O. Kyle, Judge.

Bill in equity by John R. Landman, as administrator of the estate of Ola Landman Taylor, deceased, against the Empire Life Insurance Company and the International Life Insurance Company, to enforce a policy of life insurance. From a decree overruling demurrer to the bill, respondents appeal. Affirmed.

Cooper & Cooper, of Huntsville, for appellants.

The mere contract of reinsurance creates no privity between original insured and the reinsurer. 25 Cyc. 781; Hayden v. Franklin L. I. Co., 136 F. 285, 69 C. C. A. 423. By the contract of reinsurance no recovery could be had against the reinsuring company. Spratling v. Int. L. I. Co., 23 Ga. App. 609, 99 S. E. 162.

R. E. Smith and R. C. Brickell, both of Huntsville, for appellee.

An action may be maintained by the insured against the re-insuring company. Travelers' Ins. Co. v. California Ins. Co., 1 N. D, 151, 45 N. W. 703, 8 L. R. A. 769; Carver v. Eads, 65 Ala. 190; Young v. Hawkins, 74 Ala. 370. The accrued loan value of the policy operated to continue it in force. Perkins v. Empire L. I. Co., 17 Ga. App. 658, 87 S. E. 1094. Any inconsistency between the contract of the International with the Empire and the policy issued by the Empire to the assured is not binding upon the assured. Federal L. I. Co. v. Arnold, 46 Ind. App. 114, 90 N. E. 493, 91 N. E. 357; Hayden v. Franklin L. I. Co., 136 F. 285, 69 C. C. A. 423.

THOMAS, J. The Empire Life Insurance Company issued a policy of insurance upon the life of appellee's intestate. The premiums thereon were paid in cash until May 27, 1915, when premium loan was made for the payment of the premium when due, and the same was fully paid to February 15, 1916. No other premiums were paid, though complainant's intestate lived until February 3, 1918. The insurance company becoming involved in financial difficulties, its assets and management were taken over by William A. Wright, insurance commissioner of the state of Georgia, who proceeded with the administration of the affairs of the company and to liquidate its assets, under the direction of the superior court of Fulton county, Ga. During the progress of that administration, the insurance commissioner in charge of the assets of the Empire Company executed a contract of reinsurance with the International Life Insurance Company. This contract is set out as an exhibit to the original bill as amended, and to which demurrers were overruled.

The Empire Life Insurance Company, being in a state of liquidation when this suit was brought, John R. Landman, as administrator of the estate of Ola Landman, deceased, sought a recovery on said policy of the International Life Insurance Company by virtue of the contract of reinsurance.

[1] In Travelers' Ins. Co. v. California Ins. Co., 1 N. D. 151, 45 N. W. 703, 8 L. R. A. 769, the general statement is contained (in the third headnote) to the effect that, where the loss or risk of the original assurer is assumed by another, "the original assured may sue upon such contract as having been made for his benefit." 25 Cyc. p. 782, § 2. This is but another application of the rule, obtaining in this jurisdiction, that a third person may sue upon a contract made for his benefit, if such benefit became a part of the consideration of said contract. That is to say, the beneficiary may elect to accept the benefit therein promised and secured to him, and his assent or acceptance may be manifested by resorting to an appropriate remedy, at law or in equity, for the enforcement of such

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

provision of the contract inuring to his benefit. Carver v. Eads, 65 Ala. 190; Young v. Hawkins, 74 Ala. 370; Ala. City, G. & A. Ry. Co. v. Kyle, 202 Ala. 552, 81 So. 54; Woodruff v. Satterfield, 199 Ala. 477, 74 So. 948; Interstate Land & I. Co. v. Logan, 196 Ala. 196, 72 So. 36.

[2] The receivership being in the state of Georgia, and the contract of reinsurance having been before the courts of that state, it is interesting to note the effect of decisions by the Court of Appeals of that state. In Perkins v. Empire Life Ins. Co., 17 Ga. App. 658, 659, 87 S. E. 1094, as to the provisions of the "automatically nonforfeitable clause" of the original policy of life insurance, the accrued loan value until consumed, it was declared, would operate to continue the policy in force as fully as though the premiums had been paid by the insured from funds derived from other sources. Spratling v. International Life Ins. Co., 23 Ga. App. 609, 99 S. E. 162; Morgan v. Prudential Ins. Co., 209 Ala. 110, 95 So. 355. However, the liability imposed by a contract of reinsurance declared upon by the assured must be taken and construed subject to the exemptions, modifications, and limitations stipulated, though no payment of premiums had been made by the assured to the reinsuring company. Joyce on Ins. § 131A; Fireman's Fund Ins. Co. v. Aachen, etc., Co., 2 Cal. App. 690, 84 P. 253; Spratling v. International Life Ins. Co., 23 Ga. App. 609, 99 S. E. 162.

What were the respective rights of the parties from the time of payment of the last premium to the date of assured's death? When the last premium was paid, the assured had the right to borrow on the policy the amount of that premium, by the deduction of such loan from the cash surrender value of the policy. Morgan v. Prudential Ins. Co., 209 Ala. 110, 95 So. 355. This he did, and thereafter paid no further premiums. Such was the status in law and of fact when the contract of reinsurance was entered into by the insurance commissioner and the International Company. It is alleged that:

"Thereafter the defendant Empire Life Insurance Company, its affairs having become involved, during the life of said policy, its business and affairs having been placed in the hands of William A. Wright, as insurance commissioner of the state of Georgia, by and through said Wright as such commissioner, he being duly authorized so to do, entered into an agreement with the defendant International Life Insurance Company, whereby all the insurance policies outstanding and all the risks of insurance of the defendant Empire Life Insurance Company, were transferred to and assumed by said defendant International Life Insurance Company, and the policy of insurance upon the life of orator's intestate was one of the policy contracts taken over and assumed by said defendant International Life Insurance Company, and notices of premiums due were by it sent to orator's intestate."

And that:

"The reserve fund contracted and stipulated for in said policy, if set aside and applied to the policy of orator's intestate, as provided in said policy, was sufficient to have kept said policy in force and effect until after the death of orator's intestate, or, if not sufficient, the covenants in said policy were such that, by the policy agreement itself, said policy was in force and effect at the time of the death of orator's intestate."

Sections 3 and 4 of the bill aver that the policy and the premium note given are in the possession of the defendant International Life Insurance Company.

In response to grounds of demurrer, the bill as amended exhibits the contract of reinsurance, prefacing the same by the averment of fact:

"That, at the time said contract was entered into, the policy of insurance of orator's intestate, above referred to, was an outstanding policy of life insurance of the defendant Empire Life Insurance Company, as provided in section 1 of said contract, and was one of the policy contracts so assumed by defendant International Life Insurance Company, and said policy was in force and effect at the time of the death of orator's intestate."

And section 1 of that contract is as follows:

"The International hereby assumes and reinsures all of the outstanding policies or contracts of life insurance of the Empire, and agrees, subject to the exceptions, modifications, and limitations hereinafter stated, to carry out the terms and conditions thereof, and to pay all liability arising thereon as fully and completely as the Empire would have been bound to do but for this contract. The International assumes no liability whatever except on the outstanding policies or contracts of life insurance of the Empire as limited and modified herein."

It is further stipulated that the reserve value of the policies shall be ascertained by an actuary and as provided for. The true intent of the contracting parties is declared as establishing—

"the foregoing described basis as a basis of reserves and net premiums on which policies of the Empire shall be valued in any audit or valuation contemplated under this contract, and to establish such reserve basis as the basis of surrender values of such policies of the said Empire reinsured hereunder by the International, as provided by their terms for a surrender value in cash or valuable consideration greater then provided by the above basis of valuation, less the surrender charges hereinafter provided, and the foregoing basis is by the execution of this contract, established and made conclusive upon policy holders of the Empire, except that in no instance shall the values originally provided be hereby increased. The reserve value on every policy shall be ascertained, which reserve, together with future net premiums, shall be sufficient to purchase all the benefits guaranteed by such policies on

the basis described above. The reserve for disability benefits, if any, shall be valued on McAdams' tables of total disability benefits."

It is further stipulated as follows:

"Cash loans and cash surrender values shall not be available to the policy holders of the Empire for a period of one year from the date of this contract, nor thereafter except to the extent of the amounts turned over to the International for the credit of each policy, plus the net additions to reserve from premiums paid by the policy holder in cash, diminished by the surrender charge hereinafter designated, until said liens shall be fully liquidated. So long as said liens, or any part thereof, remain unsatisfied, a surrender charge of 2 per cent. of the face of the policies shall be enforced against all policies. This provision is not intended to impose a surrender charge of 2 per cent. in addition to the surrender charge already provided for in said policies, but to make such a charge in the case of policies which provide no surrender charge, and to increase the charge in policies which provide for a less surrender charge to a sufficient amount to make a surrender charge of 2 per cent. After said liens are fully liquidated, a surrender charge not exceeding 1½ per cent. of the full amount of each policy, may, at the option of the International, be exacted from surrendering policy holders."

The date of the contract of reinsurance was March 17, 1916, and the death of assured, on February 3, 1918, was not within the period of one year from the date of said contract of reinsurance and section 10 thereof, just quoted. Thereafter, as against the reinsuring company, the "cash loans" and "cash surrender values" were available to the assured to the extent of the amount turned over to the International Company for the credit of each policy, plus the net additions to reserve from premiums paid by the policy holder (in this case there was no such payment made after the payment by loan on the policy), diminished by a "surrender charge of 2 per cent. of the face" of the policy as provided in the original policy, as stipulated (between the reinsuring parties) for this and all other policies reinsured.

[3] Was the instant policy in force, either under extended insurance or under the automatic premium loan, provided by the terms of the original contract and payment of premiums thereunder to the Empire Life Insurance Company? If so, the Empire Company was liable for the amount of reinsurance. Was it of force also as against the reinsuring company?

[4] The contract of reinsurance provided that a lien for a loan might be charged, to the amount indicated, to cover the reserve liability. There is no averment which showed a lien, if any there was, charged on this particular policy, or that such lien caused cancellation of the policy as to the reinsur-

ing company. If a lien was charged or existed under the contract of reinsurance, the question of fact is presented: Had the assured notice or knowledge thereof, and, if so, did he, expressly or impliedly, assent to this charge? Thus we are brought to the inquiry: Had the Empire Life Insurance Company, or its representative in the contract, the authority to make such a contract with another company, without the knowledge or consent of assured, which abrogated the rights of the policy holder as against the liability of the Empire Company? To this we answer in the negative, since under the original contract it is not averred that the policy holder did any act that amounted to a ratification of or agreement to the contract of reinsurance—which vitally changed the terms of his contract with the original insuring company.

[5-7] On the other hand, the insurance commissioner, liquidating the affairs of the Empire Life Insurance Company, had the right of contract with the International Company, and, under the reinsurance contract exhibited, to make changes in the terms of the original policies as merely binding the contracting parties. Where, as here, the beneficiary by suit accepts the contract of reinsurance made for his benefit, it is to be liberally construed in favor of the assured, and it is incumbent on the reinsuring company, by its pleadings and as defensive matter, to set up its calculations and allowances, on the instant policy, which established the fact that assured had forfeited his rights under the policy, and that, as to it, the policy had lapsed before assured's death, or that it was not embraced within the contract of reinsurance.

It may be inquired: If the policy involved in this case was not one of the outstanding policies assumed by the International Company, and as to which it agreed to carry out the terms and conditions stipulated, consistent with its contract of reinsurance, then why were the policy and the premium note in its averred possession, and why did said reinsuring company send notice of premium thereafter to assured? Do not all these averred acts of the International Life Insurance Company show that it regarded the policy as one assumed by it, and the terms and conditions of which it was bound to fulfill under its contract of reinsurance?

The Court of Appeals of Indiana, in Federal Life Ins. Co. v. Arnold, 46 Ind. App. 114, 120, 90 N. E. 493, 495, said:

"The third paragraph of appellant's answer set up a stipulation in the contract of insurance entered into between the two companies, by the terms of which it was provided that any policy of the Model Insurance Company, reinsured by the Federal, on which premiums were not paid when due, or within 30 days thereafter, should become ipso facto null and void,

and all premiums and assessments theretofore paid forfeited to appellant. The rights of the assured, Alfred H. Arnold, to insure for 6 years and 242 days, under and by virtue of his policy issued to him by the Model Insurance Company, had, when this contract of reinsurance was entered into between the two companies, become fixed, *and the Model Company had the funds presumably in its hands to meet its liability under this contract.* [Italics supplied.] These funds the Federal Life took into its possession under the contract of insurance, and, while holding these funds, it will not be heard to say that it is not liable to answer the demand the fund was created to meet, and any inconsistency between the terms of its contract with the Model, and the contract of the Model under the policy with the assured, is not binding upon the assured,"

—unless, we may add, assent thereto be averred and shown.

In the case at bar, the policy upon the life of appellee's intestate had, by reason of the "automatically nonforfeitable clause," sufficient time to run to cover the period to the death of appellee's intestate, as did the policy in the Arnold Case, supra, as affecting Empire Life Insurance Company.

[8] What are the facts defeating or affecting the reinsurance contract? If such there were, they should have been pleaded by defendant International Life Insurance Company. The allegations of the bill are sufficient to provoke a trial on the facts—to call for a statement of the account, for the purpose of determining the amount of the reserve fund which should be credited to the policy of appellee's intestate and the reinsurance feature thereof assented to by the suit against the reinsurer, that it may be determined if such reserve was sufficient to have maintained the policy as a liability according to its terms and those of the reinsurance. Such is the state of the policy, even if on final hearing it should be determined that suhc liability does not exist by reason of the "automatically nonforfeitable clause" of the policy, set forth in the exhibit and the terms of the reinsurance contract. Hayden v. Franklin Life Ins. Co., 136 F. 285, 69 C. C. A. 423.

[9] The demurrer admits the allegations of the bill to be true, and its only office is to test the sufficiency of the averments of the bill to state a case against defendants, not to negative defenses which the defendants are supposed or required to rely upon under the reinsurance contract, to which appellee's intestate was not a party, but which is assented to by the bringing of this suit.

The decree of the circuit court in equity is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and BOULDIN, JJ., concur.