Western Life Indemnity Co. v. Bartlett—84 Ind. App. 589.

# WESTERN LIFE INDEMNITY COMPANY v. BARTLETT.

[No. 11,769. Filed December 11, 1924. Rehearing denied June 5, 1925. Transfer denied May 18, 1926.]

1. INSURANCE.—*Applicability of §8998 Burns 1926, to a company not doing business on assessment plan.*—Section 8998 Burns 1926, §4753 Burns 1914, relative to the reinsurance of the risks of an insurance company is not applicable to a company that was not doing business on the assessment plan. p. 602.

2. INSURANCE.—*Company purchasing the good will of insolvent company, but nothing else, and issuing new policies, is not bound by conditions in policies of insolvent company.*—Where an insurance company purchased from the receiver of an insolvent company the good will thereof, but not the other assets of the company, and reinsured the policy-holders by issuing new policies, in accordance with the terms of a contract between the receiver and the purchasing company, it was not bound by the conditions of the policies issued by the insolvent company (*Federal Life Ins. Co.* v. *Kerr,* 173 Ind. 613, *Federal Life Ins. Co.* v. *Petty,* 177 Ind. 256, *Federal Life Ins. Co.* v. *Weedon, Admr.,* 68 Ind. App. 529, and *Federal Life Ins. Co.* v. *Risinger,* 46 Ind. App. 146, distinguished). p. 602.

3. INSURANCE.—*Failure to pay premium within time limited in the policy causes policy to lapse.*—Where an insurance policy provided that if any premium was not paid when due, the policy should terminate, and a premium was not paid within the grace period specified in the policy, the policy lapsed for failure to pay the premium, especially where the insurance company notified the insured of the necessity of reinstatement and later, on disapproving an application for reinstatement, gave notice that, under the terms of the policy, the application must be accompanied by a physician's certificate showing good health, which was not furnished. p. 603.

4. INSURANCE.—*Insurance company was not estopped to claim lapse of policy for non-payment of premium where policy provided that notice was waived and insured was not misled by failure to give notice.*—Where an insurance policy contained a provision that notice of

the time when premiums would be due was waived, the policy providing that the premiums should be paid on the first of each month, with a grace period of thirty days, the insurance company was not estopped to claim a lapse of the policy by the nonpayment of a premium within the stipulated time, where the insured was not misled by the failure to give notice of the time the premium was due. p. 603.

5. INSURANCE.—*The statute requiring life insurance policies to provide for dividends, options on default, etc., does not apply to companies organized on the assessment plan.*—Under the provisions of §8089 Burns 1926, §4744 Burns 1914, a company issuing policies providing for fixed monthly premiums, but reserving the right to levy assessments on the policy-holders when the premiums were not sufficient to meet the obligations of the company, was doing business on the assessment plan, and was subject only to the provisions of that act, and §9036 Burns 1926, §4622a Burns 1914, requiring life insurance policies to contain provisions as to dividends, options upon default in payment of premiums, etc., was not applicable. p. 606.

6. INSURANCE.—*Overruling objection to testimony as to surplus at time of default in premium was error in action against assessment company, as the statute relative to participation in surplus does not apply to assessment companies.*—In an action on a policy issued by a company doing business on the assessment plan, it was error to overrule objection to testimony as to amount of surplus defendant had on hand at the time of default in the payment of a premium which caused the lapse of the policy, as the policy-holder's right to participate in the surplus is given by §9036 Burns 1926, §4622a Burns 1914, which is not applicable to assessment companies. p. 606.

7. INSURANCE.—*In action on policy issued by reinsuring company, evidence as to provisions of former policy issued by insolvent company was improper.*—In an action on an insurance policy issued by a company which purchased the risks of an insolvent company from the receiver thereof and reinsured the policy-holders, all evidence relating to the provisions of the policy issued to the plaintiff by the insolvent company was improper. p. 608.

8. INSURANCE.—*In action on policy issued by reinsuring company, statements of defendant's soliciting agent, concerning method of securing contract was incompetent.*—In an action on an insurance policy issued by a company that purchased the risks of an insolvent company from the receiver thereof and re-

insured such policy-holders as desired it, in compliance with a contract between the receiver and the defendant, testimony that defendant's soliciting agent stated that plaintiff would have to take defendant's policy or get nothing, that she did not have a copy of the contract between the receiver and defendant, that she was not represented by an attorney in the proceedings wherein the receiver was appointed, was incompetent and should have been excluded on objection.  p. 608.

9.  INSURANCE.—*Authority of court appointing receiver for insolvent insurance company.*—The court which appoints a receiver for an insolvent insurance company has the power to authorize the receiver to contract with another company to take over and reinsure the risks of the insolvent company. p. 608.

10.  INSURANCE.—*On purchase of the good will of insolvent insurance company from the receiver, rights and liabilities of parties are measured by reinsurance contract and new policies issued.*—Where an insurance company purchased from a receiver the good will of an insolvent insurance company and contracted with the receiver to reinsure such policy-holders as desired reinsurance, the rights and liabilities of the parties were measured by the provisions of the contract and the policies of reinsurance, the rule being different from a case where the reinsuring company purchased all the assets of another company and assumed all the liabilities of the selling company.  p. 608.

11.  INSURANCE.—*Measure of reinsuring company's liability, in absence of statutory or contractual regulations, stated.*—In the absence of a statute or provisions in a contract of reinsurance requiring a reinsuring company to assume the obligations and conditions in the policies of the company to be reinsured, the measure of the reinsuring company's liability is the contract of reinsurance and the policies thereafter issued by it.  p. 608.

12.  INSURANCE.—*Evidence held insufficient to show double payment of premiums.*—In an action on a life insurance policy, where the defense was made that the policy had lapsed because of the non-payment of a monthly premium, the evidence *held* insufficient to show that there had been a double payment of two previous premiums, which would have extended the insurance to cover the time for which no payment was made.  p. 611.

13.  INSURANCE.—*Where premium is variable and unknown by insured, notice of time when premiums will be due is necessary before forfeiture.*—Where the amount of the premium is vari-

Western Life Indemnity Co. v. Bartlett—84 Ind. App. 589.

able and cannot be known by the insured, but can only be determined by conditions wholly within the knowledge of the insurer, notice of the time when premiums will be due is necessary before there can be a forfeiture for failure to pay a premium when due.   p. 621.

14.   INSURANCE.—*In absence of agreement or statute requiring notice of amount and maturity of premiums, an ordinary insurance company is not obliged to give such notice.*—In ordinary life insurance, where the policy fixes definitely the amount of the premium and the time of payment, the insurance company is under no obligation to give the insured notice of the amount and maturity of the premiums accruing on the policy, unless there is an express or implied agreement that notice shall be given or a statute requiring notice.   p. 623.

15.   INSURANCE.—*Even though customary failure to give notice that premium is due must be proximate cause of failure to pay to avoid a forfeiture.*—Although there has been a uniform custom of giving notice of the time when premiums were due, and there was a failure to give such notice and a failure to pay, the act of the company in failing to give notice must be the proximate cause of the failure to pay in order to avoid a forfeiture for non-payment.   p. 625.

16.   INSURANCE.—*To relieve from forfeiture for non-payment of premium because of failure to give customary notice insured must make tender within reasonable time.*—An insured, seeking to relieve himself from a forfeiture for non-payment of a premium because of insurer's failure to give the customary notice, must pay or offer to pay within a reasonable time, or the forfeiture will be enforced, barring some providential hindrance preventing such payment.   p. 625.

17.   INSURANCE.—*After default because of failure to give customary notice, payment must be made within grace period to avoid forfeiture.*—Where the insured knew, without notice, when a monthly premium was due and the amount thereof, the failure of the company to give the customary notice of the due date did not excuse the failure to pay the premium within thirty-day grace period, and thereby avoid a forfeiture, although she had previously waited until she received notice, which was usually sent about fifteen days before each premium was due, as the grace period must be held to be a reasonable time for payment after default.   p. 625.

18.   INSURANCE.—*After lapse plaintiff has burden of proving proximate cause of failure to pay and that payment was offered within reasonable time thereafter.*—In an action

Western Life Indemnity Co. *v.* Bartlett—84 Ind. App. 589.

on a life insurance policy which was defended on the ground that the policy had lapsed because of the non-payment of a premium when due or within the grace period thereafter, the plaintiff had the burden of proving that the failure to pay was the proximate result of the failure of the insurance company to give the customary notice of the time the premium was due and that payment was offered within a reasonable time thereafter.   p. 626.

19. INSURANCE.—*Evidence held insufficient to show that failure to pay premium within grace period was proximate result of insurer's failure to give customary notice of due date of premium.*—In an action on a life insurance policy providing that notice of the time when the premium payments were due was waived, .where the defense was made that the policy had lapsed because of the non-payment of a monthly premium, the evidence was *held* insufficient to show that the failure to pay the premium within the grace period was the proximate result of the company's failure to give the customary notice of the due date.   p. 627.

20. TRIAL.—*Instruction held not objectionable as permitting jury to consider matters outside of the evidence.*—An instruction that, in arriving at the weight and credit to be given the testimony of the witnesses, the jury had the right to take into consideration their actions and demeanor on the witness stand, their willingness or unwillingness to testify, their means of knowing the things about which they testified, the reasonableness or unreasonableness of their testimony, and, "from these facts determine what has been proved," was not objectionable as permitting the jury to consider matters outside of the evidence. p. 628.

21. INSURANCE.—*Instruction as to the effect of prior double payment of certain premiums held not warranted.*—In an action on a life insurance policy, defended on the ground that the policy had lapsed by the non-payment of a monthly premium, *held* that there was no evidence to warrant the giving of an instruction that if the insured had made double payment of certain premiums there could be no forfeiture for the non-payment pleaded, there being no claim by the insured or any other witness that double payments had been made.   p. 628.

22. INSURANCE.—*Instruction held not within the issues and in conflict with other instructions.*—In an action on an insurance policy where the defense was made that the policy had lapsed because of the non-payment of a premium, an instruction as to

estoppel to claim lapse of policy if notices of time of payment prior to the alleged lapse contained directions that they should be returned with the payments made, *held* not within the issues, and in conflict with other instructions given.   p. 630.

23.   APPEAL.—*Theory of case adopted in trial court by appellee, appellant and the court will be adhered to on appeal.*—Where the record conclusively shows that the appellee, appellant and the trial court pursued the theory that the insurance policy sued on was one issued by the defendant after taking over and reinsuring the risks of an insolvent company, in accordance with a contract between the receiver thereof and the defendant, that theory will be adhered to on appeal.   p. 632.

From Dubois Circuit Court; *John L. Sumner,* Special Judge.

Action by Ellen Bartlett against the Western Life Indemnity Company.   From a judgment for plaintiff, the defendant appeals.   *Reversed.*   By the second division.

*Thomas J. Graydon, Lucius C. Embree* and *Morton C. Embree,* for appellant.

*W. E. Cox* and *Sol. H. Esarey,* for appellee.

McMAHAN, J.—Action by appellee to recover on a dual policy of insurance issued by appellant insuring the lives of appellee and her husband, John Bartlett.

A complaint in one paragraph was filed May 15, 1922, alleging that appellant in September, 1913, in consideration of the payment of $6.68 payable on the first day of each calendar month, issued the policy sued on, wherein it agreed to pay appellee, upon proper proof of the death of John Bartlett, the sum of $2,000; that all the monthly premiums were paid up to and including the premium due March 1, 1922; that John Bartlett died in March, 1922, at a time when the policy was in force and that appellee and her husband had performed all the conditions of the policy required of them.   The policy, a copy of which was made a part of the complaint,

granted thirty days' grace for payment of every premium after the first year and contained a provision to the effect that notice of each and every payment due or to become due on account of the policy was given and accepted by the delivery and acceptance of the policy and that any further notice was waived. It also provided that if the policy lapsed for non-payment of premiums, it might be reinstated within three months thereafter, upon satisfactory evidence of the insurability of both of the insured parties and the payment of all premiums then due and unpaid with interest.

Appellant filed answer in three paragraphs. The first was a general denial. The second alleged that the policy had lapsed on account of the failure to pay the premiums for January, February and March, 1922, and was not in force when the insured died. The third, after alleging the execution of the policy, alleged that it provided for a grace of thirty days for the payment of premiums, during which time the insurance should continue in force, and, except as otherwise provided, a failure to pay a premium when due rendered the policy void. It also alleged that a premium became due and payable January 1, 1922, and another February 1, 1922, which was more than thirty days prior to the death of insured; that neither of said premiums had been paid prior to the death of the insured and that, by reason thereof, the policy had lapsed and was not in force when Bartlett died.

Appellee replied in four paragraphs. The first was a denial. The second admitted that, under the terms of the policy, a premium of $6.68 became due the first day of each month, but alleged that for a period of two years next after the issuance of such policy, appellant retained an agent at West Baden to collect the premiums on such policy, during which time, appellee and

her husband paid the premium to such agent on the first of each month, that in 1915, appellant agreed if appellee and her husband would send the premiums when due to appellant's office in Chicago, Illinois, appellant would give them a discount of ten cents on each monthly premium, thereby making the monthly premium $6.58 instead of $6.68, and that thereafter, appellee and her husband, on the first day of each month, or within the thirty days' grace, paid monthly premiums by checks, drafts or money orders, which appellant accepted and applied on such premiums.

The third alleged that on February 4, 1922, she remitted to appellant by draft the premium due January 1, 1922; that on March 13, 1922, she sent appellant two drafts in payment of the premiums falling due February 1 and March 1, and that appellant accepted each of said drafts and retained the same without cashing them until after the death of John Bartlett, on March 19, 1922, when appellant, on learning of the death of John Bartlett, returned said drafts to appellee without having cashed the same.

The fourth admitted the execution of the policy, that the premiums were due and payable on the first day of each month, that the policy provided for a grace of thirty days for payment and that non-payment of a premium when due or within the period of grace rendered the policy void. It then alleged that down to March 19, 1922, the date when John Bartlett died, each and all monthly premiums had been remitted to and accepted by appellant; that appellee sent drafts to appellant in payment of the premiums due January 1, February 1, and March 1, 1922, at the times alleged in third paragraph of reply; that on February 6, she received notice from appellant that the policy had lapsed by reason of failure to pay the premium due January 1, on that day

or within thirty days thereafter, and that the policy could be revived on condition appellee and her husband would sign and execute an application for that purpose; that, upon receiving from appellant a blank for that purpose, she signed such application and also, under an arrangement with her husband, she signed his name to such application and thereafter mailed the same to appellant, who accepted and retained the same without any objection until March 18, 1922, when appellant informed her by letter that John Bartlett would have to submit to a medical examination before the policy would be revived; that she did not receive said letter until after the death of her husband, which took place March 19, 1922, and that, by reason of such facts, appellant was estopped from claiming the policy had lapsed.

Later, a second paragraph of complaint was filed, alleging that in April, 1912, the American Life Annuity Company, hereafter referred to as the "American company," on application of appellee and her husband, issued to them a dual joint policy of life insurance; that on May 21, 1913, a contract of re-insurance was entered into by appellant with a representative of said American company, a copy of said contract being made a part of the complaint; that on September 19, 1913, appellant applied to appellee and her husband to make application to appellant for a dual policy of life insurance and to accept such policy in lieu of the policy theretofore issued by the American company; that appellee and her husband were ignorant of the fact that the reinsurance contract had been entered into and did not know the terms thereof; that appellant represented to them that the only way they could maintain any insurance in respect to the American policy was for them to surrender that policy and make application for and receive a policy from appellant; that appellant would issue

but one form of policy and that there was no other method by which they could maintain any part of said insurance and that appellee and her husband, believing said representations, acted upon them and made application for and accepted the policy sued on. A copy of such application and policy issued by appellant were made a part of the complaint. It was also alleged that appellee and her husband performed all the conditions required of them, and that Bartlett died March 19, 1922, and demanding judgment.

The contract of appellant to take over and reinsure the risks of the American company recites that, on May 14, 1913, the Vanderburgh Circuit Court appointed a receiver for the American company; that this receiver, after qualifying, filed a petition for leave to sell the business of such company; that such leave was granted and thereafter the receiver filed his report showing he had entered into a contract with appellant, subject to the approval of the court, for the sale and transfer of the business of the American company to appellant.

This contract had theretofore been submitted to and approved by the commissioner of insurance, and on May 21, 1913, was approved by the judge of said court. It recites that appellant "does hereby reinsure and accept as its members upon the terms and to the extent as hereinafter provided, all of the contributing members" of the American company in good standing and, "who shall accept and assent to this contract in the manner hereinafter provided, and who shall pay respectively to the Western company the requisite premiums for the continuation and maintenance of their insurance protection from and after the date this agreement goes into effect in the way and manner and to the amount as hereinafter provided." It also provided that members of the American company holding dual life policies could,

at their option, continue to pay appellant the same premium as theretofore paid the American company and be thereafter insured against death, and no other contingency, in appellant company for an amount not exceeding the sum to be paid by the American policies as the premiums paid by such members to appellant would purchase according to a table of rates attached to the contract. It also provided that, upon making written application therefor, any member of the American company should, if the member's policy was then in force, upon the surrender of the American policy, receive, free of expense and without further examination, the Whole Life Non-Participating Policy, or the Cooperative Dual Life Policy of appellant company if the members held a joint policy on two lives. A copy of the policy to be issued by appellant was attached to and made a part of said contract between said receiver and appellant. It also provided that appellant should proceed with diligence to substitute its policies in lieu of the policies theretofore issued by the American company in order that each member of the American company reinsured might be "advised intelligently in plain words and figures in the policy substituted" of the exact amount payable under the new policy issued by appellant, and appellant agreed to issue its rider of assumption in accordance with the contract and mail the same to each member of the American company reinsured, which rider of assumption should be deemed accepted by each member who continued his policy in force under the terms of the reinsurance contract. A form of such rider was also attached to and made a part of the contract.

This contract further provided that the receiver, in consideration of the good will of said American company, should receive from appellant twenty-five per cent.

of all premiums received by appellant during the first year after the approval of the contract; that a cash payment of a premium by the holder of a policy in the American company to appellant for the maintenance of his policy under the provision of the contract should be regarded as conclusive evidence of the acceptance of and assent to the agreement between the receiver and appellant, and that appellant should not be liable to or accountable to members or policy-holders of the American company until they had made one premium payment to appellant company.

To this paragraph of complaint, appellant filed an answer in three paragraphs, in substance, the same as the answer theretofore filed to the first paragraph of complaint. A reply in four paragraphs was filed to the second and third paragraphs of answer to the second paragraph of complaint. The first paragraph of this reply was a general denial. The second alleged that during the life of the policy sued on, appellant collected premiums monthly, part of said premiums being collected by an agent who collected such premiums both before and after the same were due, and before and after the expiration of the thirty days of grace; that such collecting agent informed appellee it was not necessary that the premiums should be paid before or during the period of grace, but that it would be all right to pay them after the expiration of such period; that appellee and her husband acted upon such statement and, during the term of the policy sued on, did at times make payments after the expiration of the thirty days' grace provided for in the policy and that, by reason of said instructions and their reliance thereon, they failed to make payment of the premiums due January 1, and February 1, 1922, until after the thirty days of grace had expired.

The third alleged that appellant had, at all times prior to January 1, 1922, given appellee and her husband a written notice when each monthly premium was due, said notice being given about fifteen days before the premiums became due; that they paid all premiums due to and including December 1, 1921, but that appellant failed to give them any notice of the premiums payable January 1, February 1, and March 1, 1922, and by reason of their reliance on such notices and the failure of appellant to send or deliver said notices, they failed to pay the premiums due January 1, and February 1, 1922, within the thirty-day period of grace.

By the fourth paragraph of reply, appellee, after alleging the premiums were to be paid on the first of each calendar month and the allowance of a thirty-day period of grace in which to make such payment, alleged that the premium due January 1, 1922, was not paid until February 4, 1922, at which time, appellee was informed by letter that an application for reinstatement must be executed by her and her husband, that such application was executed by her and her husband and by them returned to appellant on said day, with the amount of the premium for January, which premium appellant retained without giving her or her husband notice thereof; that appellee waited until March 8, 1922, in order to receive appellant's decision as to reinstatement and, upon said last named day, she forwarded to appellant the premium for February and March, 1922.

A trial by jury resulted in a verdict and judgment for appellee in the sum of $2,090. A motion for a new trial being overruled, appellant appeals, assigning as error the overruling of its motion for a new trial.

The specifications in the motion for a new trial are that the verdict is contrary to law; that it is not sustained by sufficient evidence, that the court erred in

admitting and excluding certain evidence, and in giving and refusing to give certain instructions.

The first contention of appellant is that the verdict is contrary to law. Appellee, in opposition to this contention, insists that under §8998 Burns 1926, 1, 2. §4753 Burns 1914, Acts 1897 p. 318, §15, appellant, as a reinsuring company, is bound by all the provisions of the policy of insurance issued by the American company, it being claimed that under the provisions of that policy, the insured had a period of two months' grace for the payment of premiums, during which the policy remained in full force and during which time the insured could pay the premiums as a matter of right. In support of this contention, appellee cites and relies upon *Federal Life Ins. Co.* v. *Kerr* (1909), 173 Ind. 613; *Federal Life Ins. Co.* v. *Petty* (1912), 177 Ind. 256; *Federal Life Ins. Co.* v. *Weedon, Admr.* (1918), 68 Ind. App. 529; and *Federal Life Ins. Co.* v. *Risinger* (1910), 46 Ind. App. 146. Section 8998, *supra,* is §15 of an act concerning the organization and regulation of corporations doing insurance business on the assessment plan. But there is no allegation in any of the pleadings that the American company was organized under that act or that it was doing business on the assessment plan, nor is there any evidence to that effect. In each of the cases cited by appellee, the complaint alleged the issuance of the original contract of insurance, the entering into the reinsurance contract by the two insurance companies and the subsequent issuance of a policy of insurance by the reinsuring company, the original policy of insurance and the policy issued by the reinsuring company being made a part of the complaint in each case. It was alleged and proved in each of the cases cited that the companies issuing the original policies of insurance were organized

under the above mentioned statute, were doing an insurance business on the assessment plan and that the contract whereby the Federal company agreed to reinsure was entered into under §8998, *supra.* In the instant case, the only policy of insurance sued on and made a part of the complaint is the policy issued by appellant. The second paragraph of complaint, in addition to making the policy issued by appellant a part of the complaint, refers to and makes the contract between the receiver of the American company and appellant a part of the complaint. Appellant, under this agreement, did not take over all of the assets of the original company as did the Federal company in each of the above cited cases. Here the only thing which passed to appellant was the good will of the American company. All the other property of the latter company was retained by the receiver. The contract in the instant case was made by the receiver, under the authority and approval of the court. It was a contract of sale and reinsurance, made by the court, through the receiver, and not by the American company in its corporate capacity. There is nothing in the record in the instant case showing that the policy issued by appellant is not identical in form with the policy issued by the American company. The policy issued by the latter company was not introduced in evidence and we do not know what its provisions were. It is clear that neither of the authorities cited, nor §8998, *supra,* is applicable to the facts as disclosed by the record in this case.

The premiums on the policy issued by appellant and sued on were, by the terms thereof, due and payable on the first day of each month, subject to a provision giving the insured thirty days for the payment of every premium after the first year. The policy expressly provided that if any premium was not paid when due, the policy thereupon should cease

and determine. It also provided that if the policy lapsed for non-payment of a premium, it might be reinstated within three months thereafter upon satisfactory evidence being furnished appellant of the insurability of both parties insured and upon payment of all premiums then due and unpaid with interest. Prior to July 1, 1920, all premiums were paid when due or within the thirty-day period of grace. The premium due July 1, 1920, was not paid when due or within this period. On August 4, 1920, appellee mailed a check to appellant in payment of the premium due July 1. On August 6, 1920, appellant acknowledged receipt of the check, and notified appellee that it could not accept the same for the reason that the policy had lapsed because of the failure to pay within the grace period. Applications for revival of the policy were made out at that time, one purporting to be signed by appellee and one by John Bartlett. It appearing that the one purporting to be signed by John Bartlett was not signed by him, but that appellee had signed his name thereto, it was not approved, and later one was properly signed by him and all premiums then due being paid, the applications were approved and the policy reinstated September 9, 1920. Thereafter, appellee paid all premiums, up to and including the one due December 1, 1921, when due or within the thirty-day period of grace. No attempt was made to pay the premium due January 1, 1922, prior to February 4, 1922. Appellant, as before stated, refused to accept the check mailed February 4, and notified appellee that the check received could not be accepted because the policy had lapsed by reason of failure to pay within the grace period, and mailed blank forms to appellee to be signed by her and her husband for the revival of the policy. March 13, 1922, appellee, without having made application for revival, sent two drafts to appellant for the premiums due February 1,

and March 1. On March 15, appellant acknowledged receipt of these drafts and again wrote appellee that the policy had lapsed and could only be reinstated upon the execution by her and her husband of the applications which had theretofore been mailed to her. On March 17, appellee returned an application for revival signed "Ellen and John Bartlett." It appearing that this application had not been signed by John Bartlett, appellant refused to approve the same, and sent appellee another blank application, with directions to have the same signed by her husband. The policy provided that in case it lapsed for non-payment of premium, and either of the insured was over fifty years of age, the application for revival should be accompanied by the certificate of a physician showing the insurability and good health of such person. Bartlett being at this time more than fifty years of age, appellee was also notified that the application would have to be supported by the certificate of a physician. This was never done, and on March 19, 1922, John Bartlett, without having made an application for the revival of the policy, died at Culver, Indiana, where he was then living. Appellee and her husband had not been living together for more than a year before his death, and, at the time of his death and for several months prior thereto, she had an action for divorce pending against him and had not seen him since December, 1920. Prior to December, 1921, appellant, about the fifteenth of each month, mailed appellee a notice that the premium on the policy would be due the first of the next month. There was evidence that such a notice was mailed to appellee about the middle of December, 1921, but appellee denied having received such notice. Under these facts, it is clear that the policy in question had lapsed by reason of the failure to pay the premium due January 1, within the period of grace, and was not in force when the insured

died, unless appellant was estopped from claiming a forfeiture by reason of its failure to notify appellee that such premium would be due January 1, 1922. It is to be remembered that the policy sued on expressly provides that the premiums should be paid on the first day of each and every month, or within the thirty-day period of grace, and that the non-payment of a premium when due or within the period of grace rendered the policy void. The policy also contained the stipulation that notice of each and every payment due, or to become due, was given and accepted by the delivery and acceptance of the policy. In other words, the parties contracted and agreed that the delivery and acceptance of the policy containing the statement as to when the premiums should be due and payable constituted notice to appellee and her husband and that notice was expressly waived. The policy issued by appellant had been in force and effect about eight years, during which time, appellee paid the premiums each month. She makes no claim that she did not know the amount of the monthly premiums or when they were due. She makes no contention that the amount or date of the payment had escaped her memory.

Appellee calls attention to §9036 Burns 1926, §4622a Burns 1914, Acts 1909 p. 251, which provides that no policy of life insurance shall be issued or delivered in this state unless it shall provide that the policy shall participate in the surplus of the company and that the policy-holder shall have the right to have current dividends paid in cash or to elect to take any other dividend option in the policy, and requiring the policy to contain paid-up and extended options upon surrender, or available upon default of premium payment. In this connection, appellee says, where a company fixes a monthly level-rate premium and makes it obligatory to pay the same upon a whole

life non-participating policy, there must, of necessity, be a reserve in favor of the insured at all periods in their expectancies, which, under said section of the statute, must be applied in payment of premiums in case of default in the payment of a premium so as to prevent a forfeiture of the policy. While the policy sued on provides for a fixed monthly premium, it also provides that if the premium so fixed is not sufficient to meet the requirements of the policy, the company reserved the right, in compliance with the law, to call for the difference necessary to meet such requirements and to fix the time for the payment thereof. This clearly indicates that the policy was issued by a company doing business on the assessment plan. See §8989 Burns 1926, §4744 Burns 1914, Acts 1897 p. 322, §6. Section 9036, *supra,* is not applicable to a company doing business on the assessment plan. See, also, §8950 Burns 1926, §4706 Burns 1914, Acts 1899 p. 30, §29, as amended by Acts 1909 p. 251, §4. The contract between appellant and the American company contained a copy of the policy which appellant would issue to appellee and her husband upon their application. The form of policy which was made a part of that contract was submitted to and approved by the commissioner of insurance and was thereafter approved by the court. It did not contain a table showing the loan values and the cash, paid-up and extended insurance options referred to in said §9036, *supra,* which is strong evidence that the insurance department and the court did not believe this section of the statute was applicable to the policy sued on. It was error to overrule appellant's objection to the question asked Miss Ryan concerning the amount of surplus appellant had on hand December 31, 1921. There is no evidence that the policy held by appellee was of a class entitled to share in any surplus, or that the premiums paid on this policy were sufficient to cre-

ate any surplus. This policy was issued by a company doing business on the assessment plan and was not the kind of policy referred to in §9036, *supra*. Having held, as we do, that appellee's complaint and right of action is based upon the contract or policy of insurance issued by appellant and that the provisions contained in the policy issued by the American company have nothing to do with the liability of appellant, all the evidence relating to the provisions of the American policy was improperly admitted. Appellee, over appellant's objection, was permitted to testify concerning statements made to her by the agent of appellant when soliciting appellee and her husband to make application for the policy in suit. For instance, she testified that the American company did not furnish her with a copy of the contract between the receiver of that company and the Western company, that she did not have an attorney to represent her in the proceedings wherein the receiver was appointed; that when the agent of the Western company came to get her application for a policy in that company, he told her she would have to take the policy in the Western company or get nothing as the American company was bankrupt. The only effect of this evidence was to mislead, confuse and prejudice the jury. Appellee makes no claim that this agent made any false or untruthful statement to her or that she was misled by anything he said to her. The American company was in the hands of a receiver. It was no longer a going concern and was not in position where it could give any protection on the policy which it had issued to appellee and her husband. There is no claim that it had power or authority, after the appointment of the receiver, to continue in the insurance business, or that it had authority to solicit new insurance, or to collect premiums thereafter falling due

on policies theretofore issued.   The receiver does not appear to have been authorized to continue the business, or to issue policies.   He was simply an officer of the court appointed for the purpose of converting the assets of the company into cash in order to arrange and adjust its business so as to effect a final settlement of the affairs of the company preparatory to its final dissolution.   See *Ensworth* v. *National Life Assn.* (1909), 81 Conn. 592, 71 Atl. 791.

The court, without doubt, had the power to authorize the receiver to execute the reinsurance contract.   No policy-holder of the American company was affected by it unless and until he exercised the option given him to accept its provisions.   Appellant incurred no liability to the policy-holders of the American company until they accepted the rights given them under that contract. When appellee and her husband accepted the provisions of the contract by exercising the option given them, and received a new policy from appellant, the rights and liabilities of appellant and appellee were measured by the provisions of that contract and of the policy issued by appellant and which is the foundation of appellee's complaint herein.   *Lester* v. *Wright* (1917), 147 Ga. 242, 93 S. E. 408.   As heretofore stated, the policy issued by the American company is not made a part of the pleadings and was not introduced in evidence.

Appellant did not, by the contract with the receiver of the American company, assume the obligations of the policies of insurance issued by said company.   It only agreed to do so in the event the policy-holders of said company became privy to such contract by assenting thereto and agreeing and contracting with appellant as stipulated in such contract.   *Lucas* v. *Pittsburgh Life, etc., Co.* (1923), 137 Va. 255, 119 S. E. 109.   As was held in *Northwestern Nat. Life Ins. Co.* v. *Gray*

(1908), 161 Fed. 488, the contract between the receiver and appellant could not and did not obligate any of the policy-holders of the American company to accept contracts of reinsurance from appellant. Whether they should do so, or whether they should resort to other remedies for securing relief occasioned by the breach, if any, of their contract with the American company was optional with them. See *Lovell* v. *St. Louis Mutual Life Ins. Co.* (1884), 111 U. S. 264, 4 Sup. Ct. 390, 28 L. Ed. 423.

In the absence of a statute requiring a reinsuring company to assume all the obligations and conditions contained in the policy of the company reinsured, and in the absence of such a provision in the contract of reinsurance, we know of no authority holding that a reinsuring company is bound by the provisions of the policies issued by the company whose policies are reinsured. The measure of a reinsuring company's liability under such circumstances is measured by the contract of reinsurance and the policies thereafter issued by it. This is not a case where the reinsuring company purchased all the assets of another company and, in consideration therefor, agreed to reinsure all risks and assume all the liabilities of the company whose assets and business were taken over by the reinsuring company. The court, through the receiver, made it possible for appellee to receive a policy of insurance from the Western company without having to submit to a medical examination. In order to do this, the contract between the receiver and the Western company called for and required that appellee and her husband should make application to the Western company showing them to be holders of a policy, to contract to pay the Western company and thereafter be insured against death for such amount as the premium so paid would purchase according to a certain table attached to the contract and

approved by the court. Appellant's objection to this evidence should have been sustained.

Appellee next contends the evidence is sufficient to sustain a finding that she made a double payment of the premiums due and payable January 1, 1917 and January 1, 1919. Assuming for the present that appellee is correct in her statement that the burden was upon appellant to prove non-payment, we will pass to a consideration of the claim of double payment of the premiums for the two months mentioned. Anna M. Ryan, secretary of appellant company, produced the record kept by appellant of all payments made by appellee and her husband to the Western company. Miss Ryan testified that this record was correct and that it showed the amount of and date when each and every premium on the policy in question had been paid. This record shows that the premium for January 1, 1917, was paid December 14, 1916, that the one for February was paid January 10, 1917, and that the one for March was paid January 30, 1917. It shows the premium for December was paid December 4, 1918, that the one for January, 1919, was paid December 17, 1918, and that the one for February, 1919, was paid January 22, 1919. It shows the payment of each and every other premium, to and including the one for December, 1921, was made prior to the time when due, or within the thirty days of grace, except the premiums payable July 1 and August 1, 1920, neither of which was paid until September 9, 1920, which was the date when the application for revival or reinstatement of the policy was approved. This record gives appellee credit for all payments made, or claimed to have been made, by her and shows no double payment of any premium. She makes no claim in her testimony that this record fails to give her credit for all payments made by her. On August 4, 1920, appellee mailed a check or draft to appellant for the pur-

pose of paying the premium due July 1, 1920; this was received by appellant August 6, and on that day, appellant wrote appellee a letter acknowledging receipt of the draft and stating that it could not accept the same for the reason that the policy had lapsed for non-payment of the July premium within the grace period, and, in that connection, sent appellee blank applications for revival of the policy, with directions that she and her husband execute and return them with a remittance for the August premium which was then due and payable. On August 16, appellee sent appellant a check for $13.16 in payment of the premiums due August 1, and September 1, 1920. On August 17, appellant acknowledged the receipt of the check and notified appellee that it could not accept the same, that appellee and her husband would have to make application for revival on forms enclosed, as stated in the letter of August 6, with the further direction that if the applications for revival were approved, the policy would be reinstated and receipts forwarded, but if for any reason the applications were not approved, the check and drafts would all be returned to appellee. Following this letter, appellee signed her name to one of the applications and signed her husband's name to another and sent them to appellant. They were not approved, as both of them had been signed by appellee and neither of them had been signed by John Bartlett. A third application signed by John Barlett was sent appellant September 6, 1920, and three days later, the applications for revival were approved, the policy reinstated and credit given for the remittances theretofore made. In these applications, appellee and her husband each conceded and admitted that, owing to default in the payment of a premium, the policy had lapsed. No claim was made at that time that there had been any double payment of premiums for January, 1917 and 1919. There is a little confusion

in the record relative to the receipts sent by appellant to appellee for the premiums due in January and February, 1917, and 1919, but when the whole evidence is given consideration, it is perfectly clear that the confusion arises from clerical errors and are not sufficient to sustain a finding that there had been any double payment of premiums. Appellee in her testimony does not make any claim of double payment. The only reasonable inference to be drawn from the evidence is that appellee has been given credit for every payment made on the policy and that there was no double payment.

Appellee next contends that appellant, having from month to month after the issuance of the policy regularly sent her notice of the due date of each monthly premium, is estopped to claim a forfeiture of the policy because of its failure to give her notice that a premium was due January 1, 1922. As heretofore stated, appellee, for nearly eight years, had been making monthly payment of premiums on the policy. She knew when each premium was due and payable and knew the exact amount she was required to pay the first day of each month. She makes no claim to the contrary. The only evidence bearing upon this question is her statement in rebuttal to the effect that she always waited until the notice came, and then went to the bank and sent the amount of the premium to appellant at once.

In *New York Life Ins. Co.* v. *Lahr* (1922), 192 Ind. 613, 137 N. E. 673, cited by appellee, the reply alleged failure to give notice according to custom, that neither appellee nor his bookkeeper whose business it was to look after and pay the premiums knew of said premiums, or that the same had not been paid, or that there was anything due from appellee until several years thereafter, when he was informed by the company that the policy had lapsed for failure to pay the premium. The opinion of the court, as modified on petition

for a rehearing, ignores the contention that the insurance company was estopped to claim a forfeiture by reason of its custom of giving notice of the time when premiums were payable, and affirmed the judgment on the theory that the act of the insurance company. in making an entry on its books showing extended insurance constituted a recognition of the validity and continued existence of the policy, and did not operate as an exercise of the company's option to terminate it.

*Supreme Council, etc.,* v. *Grove* (1911), 176 Ind. 356, 36 L. R. A. (N. S.) 913, was an action by appellee to recover on a certificate of membership in a fraternal insurance association wherein the association agreed to pay a certain sum in case appellee arrived at a stated age, was unable to earn a livelihood and was destitute of support. The real controversy was as to whether the appellee was destitute of support. Under the by-laws of the association, two regular assessments were due and payable before the first and fifteenth of each month unless said dates fell on Sunday or on a holiday, in which event, they were payable the first business day thereafter. No notice was required of these regular assessments, but notice of special assessments was required to be given by a bulletin of information, which, among other things, stated the date of the coming due date of other than regular assessments. Failure to pay on or before the date so fixed suspended the member. In 1905, this by-law was amended so as to require members to pay on every second Monday an assessment called a "regular assessment." No notice of these regular assessments was required, but the secretary was required, on or before the first of each month, to mail to each member a bulletin of information which should include a list of all deaths and disability benefits of members for the previous months and "such other information as may be determined by the

supply committee on a form approved by them." A form was approved by this committee which included a formal notice of the dates when all regular and special assessments were payable in each year. The last bulletin received by the appellee in that case, under the heading "Assessments Due and Payable in 1908," contained a statement giving the date on which each second Monday in 1908 fell, and in which April 13, was noted as being the day on which assessment No. 589 fell due. In the same bulletin was a formal notice of the preceding regular assessments Nos. 586, 587, 588, with notice that they must be paid on or before March 2, March 16, and March 30. There was no proof that any of these assessments was or was not an extra assessment, but it had been the fixed custom of the committee for many years to give the dates when the regular assessments had to be paid to prevent forfeiture. That suit was commenced in June, 1907, and appellee continued to pay all dues and assessments up to an assessment of seven dollars and forty-four cents that fell due April 13, 1908, which he did not pay, but of which he testified no notice had been given him. The trial of the cause began April 14, 1908, and, on the morning of that day, appellee tendered the amount of the assessment to the collector, which was refused. He then brought it into court for the use of the association. Without any evidence as to whether the assessment in question was a regular assessment, other than the fact that it was payable on the second Monday of the month, the court said: "But as forfeitures are not favored, appellant's custom of giving notice of the time regular assessments are due was a waiver of the right of forfeiture for non-payment, without the giving of such notice. Where notice of an assessment is required by the by-laws of the society to be given, there can be no forfeiture on that ground, unless notice is given.

\* · \* \* Nor should a forfeiture be permitted, where, during a long term of years—here the full term of membership—it has been the uniform custom of the society to give notice. Its own acts should estop it. \* \* \* There are a few cases involving annual premiums, where it had been customary to give notice, and the failure to do so has been held not to waive the forfeiture. In case of monthly assessments, it is of course only a difference in degree, but where a uniform custom has been so long and unbrokenly followed, as here, covering the entire period of membership of over twenty years, and where, without notice, there is a prompt offer to pay, it is a more just rule to deny forfeiture upon the ground of waiver."

Appellee also cites Joyce, Insurance (2d ed.) §1332, where the author says: "If a life insurance company has been in the practice of notifying the insured of the time when the premiums will fall due, and of the amount, and the custom has been so uniform and so reasonably long in continuance as to induce the insured to believe that a clause for forfeiture for non-payment will not be insisted on, but that notice will precede the insistence upon the forfeiture, and the insured is in consequence put off his guard, such notice must be given, and, if not given no advantage can be taken of such default in payment which it has thus encouraged, for the insured is entitled to expect the customary notification; and to mislead the insured by not giving such notice, and then insist upon a strict compliance with the conditions of forfeiture, constitutes under such circumstances, a fraud upon the insured which the courts have refused in numerous cases to countenance."

Many authorities are cited by the author in support of the above statement. One of the authorities cited being *Franklin Life Ins. Co.* v. *Sefton, Admr.* (1876), 53 Ind. 380, where the plaintiff, over the objection of

the defendant, was permitted to prove that it was the custom of the defendant to receive payment of premiums after they were due. This was held error, the court saying: "The custom or usage of the company could not be set up to control the terms of the contract between the parties." The trial court had instructed the jury that the act of the agent in accepting payment of a premium "after the day it was due, in the absence of fraud, would bind the company without any subsequent ratification by the company." The policy provided that agents had authority to receive premiums when due, but that they had no authority in any case, to make, alter or discharge contracts. It was held the agent had no authority to accept the premium after it became due and that the instruction was erroneous. The cause was reversed because of said error. This case, as we read and understand it, is not in point and does not support the proposition laid down by the author. This fact led us to carefully examine the cases cited by Joyce in support of the text.

In *Grant* v. *Alabama Gold Life Ins. Co.* (1885), 76 Ga. 575, the court, adhering "to the spirit of the Georgia Code," held that an insurance company might be estopped from declaring a policy forfeited by failure to give a customary notice, saying: "* * * yet the insured must act with reasonable diligence, and six months' delay to pay a premium for want of notice appears to us so unreasonable as to show a purpose to abandon the policy and let it lapse; and if the jury should decide that such was reasonable, the court should not permit the verdict to stand. Two or three months in a policy of annual premiums, a month or six weeks in semi-annual premiums, is time enough for one who has his life insured, though notice does not come to him from the company according to usage, to bestir himself to ascertain why the notice has not come, and

not to do so within such reasonable time, without some overpowering providential cause, ought to conclude him."

In *Brooklyn Life Ins. Co.* v. *Bledsoe* (1875), 52 Ala. 538, the agent who delivered the policy collected the first premium and died without making a report to the company. A few weeks before the second annual premium became due, the insured wrote the company asking an extension of time and offering to give his note with interest. He was then informed that the policy stood on the books of the company as having been canceled because of non-payment of the first premium. About ten months later, the insured died without paying or offering to pay the second premium. The cancellation of the policy was held erroneous and without right, but the cause was reversed on the ground that the evidence did not show any act on the part of the insurance company preventing performance on the part of the insured and that the non-payment was without excuse, the court saying: "It is an elementary principle, that the performance of conditions precedent may be waived, or, if the party, whose responsibility is to arise on their performance, by any act of his prevents performance, the opposite party is excused from a strict compliance. He must, however, prevent performance—he must be the proximate, not the remote cause. * * *."

*Helme* v. *Philadelphia Life Ins. Co.* (1869), 61 Pa. 107, 100 Am. Dec. 621, has been materially weakened by *Smith* v. *Nat. Life Ins. Co.* (1883), 103 Pa. St. 177, 49 Am. Rep. 121, where the court, in speaking of the contention that the failure of the insurer to send the customary notice excused the insured's default, said: "By the terms of the contract it was certainly the duty of the assured to pay on the day stipulated whether he received notice or not; he knew, or was bound to know, the several dates at which the premiums were due, and

his neglect to pay was at his own peril; the company was under no obligation to give the notice: *Thompson* v. *Insurance Co.*, 14 Otto 252. Assuming, however, that the assured may have been misled by the company's course of business, there can be no apology or excuse for two years' neglect upon that ground; such a default could not be traced to the misleading effect of the company's uniform practice in sending notices."

In *Insurance Co.* v. *Pottker* (1878), 33 Ohio St. 459, 31 Am. Rep. 555, when the policy was delivered by the agent, he agreed to give notice when each annual premium became due and to collect same at the residence of the insured. This plan of collecting premiums was carried out from the time the policy was issued in 1868 to 1872. The insured was ready, willing and able to pay the premium due in October, 1873, but no one came as usual to receive it and no notice had been given to pay otherwise than in the usual manner. A few days after the premium was due, the insured saw the agent who had theretofore collected the premiums and inquired why he had not called for the premium. On being informed by the agent that he had resigned because the company had marked a number of undesirable risks and had directed him not to call on the parties so marked or to give them notice as formerly, the insured sent the amount of the premium then due to the company. The company refused to accept the premium thus sent on the ground that the policy had been forfeited. It was there held that the insured had the right to show what had been the uniform custom in regard to the payment of the premiums and that "no right of forfeiture could arise from a default procured by such disreputable strategy."

In *Southern Life Ins. Co.* v. *McCain* (1877), 96 U. S. 84, 24 L. Ed. 653, the premium was paid to one who had theretofore been an agent of the company and to

whom premiums had been paid. The question related to the effect of a payment made to the former agent by a policy-holder who had not been advised of the change of agency and the failure of the company, after being informed by the former agent of the receipt of the premium, to notify the insured of the revocation of the authority of the former agent to receive the premium. *Globe Mut. Life Ins. Co. v. Wolff* (1877), 95 U. S. 326, 24 L. Ed. 387, involved the effect of a payment to an agent after due date of premium.

In *New York Life Ins. Co.* v. *Eggleston* (1877), 96 U. S. 572, 24 L. Ed. 481, the insured had been paying the premiums to different agents as designated by the insurer in notices theretofore given. The insured, having received no notice to whom to pay the last premium, and the due date having passed, telegraphed to one of the agents to whom former payments had been made, asking to whom payment should be made, and, on receiving a reply telling him to pay a certain agent who held the receipts, tendered payment to such agent, who refused to accept the same in the absence of a certificate of health. The insured was sick when the tender was made and died soon thereafter.

*Mayer* v. *Mutual Life Ins. Co.* (1874), 38 Iowa 304, 18 Am. Rep. 34, was apparently overruled in *Mandego* v. *Centennial Mut. Life Assn.* (1884), 64 Iowa 134, 17 N. W. 656, where it was held that the failure to send notice as was customary would not constitute à waiver of the condition of the policy relating to forfeiture because of non-payment of premiums. On petition for rehearing, it was insisted that the decision was in conflict with *Phoenix Ins. Co.* v. *Doster* (1882), 106 U. S. 30, 1 Sup. Ct. 18, 27 L. Ed. 65. In disposing of this contention, the court said: "In that case, the controversy was in relation to the annual assessments, which, we believe, are required to be paid by a day certain,

but the assured does not know the amount required. It is not the same every year, and the assured does not know the amount he is entitled to as dividends due, which he has the right to deduct from the amount payable under the policy. Now, if the company sees proper to delay sending such notices, and induces the assured to believe a forfeiture will not be insisted upon, we can readily see why it should not be permitted to insist upon a forfeiture. We have no such case. As is said in the opinion, the amount due was payable at a day certain, and the amount was fixed and known. The sending of the notice was purely a voluntary act."

In many of the cases cited by Joyce, the insurer was estopped from declaring the policy forfeited on account of having theretofore accepted payment after the due date, no question involving failure to give notice being involved. In others, the insured was entitled to apply dividends on the premiums, in consequence of which he could not pay until he had notice from the insurer of the amount to pay. The authorities are hopelessly divided on the question as to whether forfeiture will lie where the insurer has failed to give the customary notice.

It is doubtless true that where the amount of the premium is variable and cannot be known by the insured, and can only be determined by conditions wholly within the knowledge of the insurer, the giving of notice is necessary before there can be a forfeiture for failure to pay a premium when due. *Leonhard* v. *Provident Savings, etc., Soc.* (1904), 130 Fed. 287; *Phoenix Ins. Co.* v. *Doster, supra; Mutual Life Assn.* v. *Hamlin* (1891), 139 U. S. 297, 11 Sup. Ct. 61, 35 L. Ed. 167; *Hannum* v. *Waddill* (1896), 153 Mo. 161, 36 S. W. 616; *Manhattan Life Ins. Co.* v. *Smith* (1886), 44 Ohio St. 156, 5 N. E. 417, 58 Am. Rep. 806.

In *Manhattan Life Ins. Co.* v. *Smith, supra,* the court applied the rule stated, saying: "The case is to be distinguished from one where the premium is a fixed amount; and from a case, slightly differing, where, though there may be dividends which the policy-holder, at his option, may have applied on the premium, there is no agreement and uniform practice that the dividends are to be deducted each year from the premium and the balance only paid to the company. It may, probably, be safely conceded that in either of the two supposed cases the assured would have no right to depend upon a notice from the company, not even if the company had ordinarily sent such notice. For the very life of successful life insurance depends upon prompt payment of premiums, and their business would be thrown into utter confusion if companies had no means of protecting themselves by forfeiture for non-payment of premiums. But, while this is true, the contract is nevertheless an entire one of assurance for life, and the payment of the premiums, after the first, is not a condition precedent, but a condition subsequent, and the parties may deal in such way between each other as to estop the company from insisting upon a forfeiture where it would be inequitable for a forfeiture to be declared."

In addition to the authorities cited by Joyce, we have made a careful study of all other cases which we have been able to find and which might be helpful, and we call attention to the following: In *Thompson* v. *Insurance Co.* (1881), 104 U. S. 252, 26 L. Ed. 765, the court held it was no excuse for non-payment of a life insurance premium that the company failed to give notice, as was their custom, it not being obligatory under the policy. The court in that case, discussing a reply setting up usage on the part of the company of giving notice of the day of payment, and the reliance of the

insured upon having notice, said: "This is no excuse for non-payment. The assured knew, or was bound to know, when his premiums became due.  *  *  *  The reason why the insurance company gives notice to its members of the time of payment of premiums is to aid their memory and to stimulate them to prompt payment. The company is under no obligation to give such notice, and assumes no responsibility by giving it. The duty of the assured to pay at the day is the same, whether notice be given or not. Banks often give notice to their customers of the approaching maturity of their promissory notes or bills of exchange; but they are not obliged to give such notice, and their neglect to do it would furnish no excuse for non-payment at the day." This statement was quoted with approval by our supreme court in *Continental Life Ins. Co.* v. *Dorman* (1890), 125 Ind. 189.

In *Gasser's Exrx.* v. *Michigan Mut. Life Ins. Co.* (1924), 201 Ky. 659, 258 S. W. 102, in discussing the effect of a failure to pay a premium when due where there was only a reasonable delay in making the payment, resulting wholly from the failure of the insurer to give notice according to its previous custom, the court after calling attention to the fact that the case under consideration was not that kind of a case, said: "He knew from his policy that its life depended on his paying the annual premiums September 16 of each year. He paid these premiums for fifteen years, and so necessarily knew about the premiums and when they were payable. His course after he obtained the loan of $229.15 on his policy warranted the company in assuming that notice to him would be futile; his conduct clearly indicated a purpose not to continue the insurance; for, if not, he had no right to remain silent so long. The failure to receive notice from the company should have apprised him, if he wished to continue

his insurance, to pay what he owed or arrange it with the company. He could not indefinitely remain silent and take no action under the circumstance." Citing 1 Cooley, Brief on the Law of Insurance, p. 2281, where it is said: "In the case of ordinary life insurance, where the policy fixes definitely the amount of the premiums and the time of payment, the insurance company is under no obligation to give the insured notice of the amount and maturity of the premiums accruing on the policy, unless there is an express or implied agreement that notice shall be given or a statute requiring notice." And continuing, the court says: "The weight of authority seems to be to the effect that an obligation to give notice of the maturity of insurance premiums cannot be imposed by mere custom." Citing *Thompson* v. *Insurance Co., supra; Gaterman* v. *American Life Ins. Co.* (1876), 1 Mo. App. 300; *Grant* v. *Alabama Gold Life Ins. Co., supra.* For other cases holding that usage to give notice is a favor only and does not waive the right to insist on a forfeiture for non-payment, see *Union Central Life Ins. Co.* v. *Chowning* (1894), 8 Tex. Civ. App. 455, 28 S. W. 117; *Haydel* v. *Mutual Reserve, etc., Assn.* (1900), 104 Fed. 718; *Morey* v. *New York Life Ins. Co.* (1873), 17 Fed. Cas. No. 9795, 2 Woods 663; *Redmond* v. *Canadian Mutual Aid Assn.* (1890), 18 Ont. App. 335; *Campbell* v. *National Life Ins. Co.* (1874), 24 Upper Canada Common Pleas 133.

In *Yoe* v. *Benjamin C. Howard, etc., Assn.* (1885), 63 Md. 86, the court, in speaking of a thirty-day period of grace, said: "The thirty days' grace was for his [the insured's] convenience and accommodation; and though he had the full period of thirty days within which he could make payment, yet if he thought proper to defer payment to the last hour of that period, the delay was at his own risk, and not that of the association. Here the full thirty days had expired without payment and

the party died two days thereafter; and that being the case, he was not a member when he died, having by his default lost his membership and all the benefits appertaining thereto."

Our Supreme Court, in *Supreme Council, etc.,* v. *Grove, supra,* seemingly has approved the rule denying forfeiture where there has been a uniform custom of giving notice of the time when premiums are due, and where there has been a failure to give such notice, and there has been a prompt offer to pay. But in such cases, the act of the company in failing to give notice must be the proximate cause of the failure to pay. *Brooklyn Life Ins. Co.* v. *Bledsoe, supra.* And when the insured seeks to be relieved from a forfeiture for non-payment of premiums, on the ground of failure to give the customary notice, he must bestir himself and pay or offer to pay within a reasonable time. A failure to act within a reasonable time, without some providential cause, ought to conclude him. *Grant* v. *Alabama Gold Life Ins. Co., supra.*

In the usual course of events, appellee would have received a notice about the middle of December, 1921, that the next premium would be due and payable the first of January, and about the middle of January, she would have received a notice that another premium would be due February 1. She knew, without any notice, that a premium was due January 1, and that another was due February 1. She also knew the exact amount of each of them. With full knowledge of the due date and the amount of the premiums, the only effect of a notice would have been to jog her memory. Assuming, however, that each month prior to December, 1921, appellee had waited until she received notice of the premium falling due the first of the next month, such fact would not relieve her from the

duty of acting. When the notice of the January premium did not reach her until after the notice of the February premium ordinarily would have reached her, ordinary prudence most certainly required her to take notice of such failure and to hasten to ascertain why the notice had failed to arrive at the proper time. Knowing a premium was due January 1, she knew that, by the terms of the policy, the premium must be paid when due or within thirty days thereafter. If, as was held in the Georgia case, two or three months, where the premiums are payable yearly, a month or six weeks, where they are payable semi-annually, are reasonable times within which to pay, the thirty-day period of grace in the instant case should, as a matter of law, be held a reasonable time within which to pay, since the purpose of granting grace is to relieve the insured from possible default within that time in the payment of premiums when due. The fact that an insured, with the knowledge possessed by appellee, allows six weeks to pass by after failing to receive the customary monthly notice, and also allows the time for paying two premiums to pass, without any excuse for so doing other than that she had theretofore waited until the receipt of notice, should not be sufficient to relieve her from the failure to pay within time, when there is no claim that she did not know the amount of the premiums and when they were due and payable. Such a failure can result only from negligence.

Conceding the law to be as contended for by appellee, she had the burden of proving that her failure to pay the premium of January 1, 1922, on that day or within a reasonable time thereafter, was the proximate result of the failure of appellant to give the customary notice. She also had the burden of proving that she offered to pay within a reasonable time after January 1, 1922.

Considering the evidence most favorable to appellee, it shows she entered into a contract requiring her to pay a fixed premium on the first day of each month; that, by such contract, she agreed that notice of the time when the payments should be made was given and accepted by the acceptance of the policy and that any other notice was waived; that she paid these monthly installments for a period of eight years; that notwithstanding appellant was not required to give her notice of the due date of the premiums, it had given notice each month, except that it failed in December, 1921, to give notice of the premium due January 1, 1922; that the contract provided for a grace of thirty days; that she, without any excuse for not paying within the period of grace other than that she had always waited until she received the notice. This, in our judgment, is not sufficient to discharge the burden of proving that her failure to pay within the period of grace was the proximate result of the failure of appellant to give the customary notice, and to relieve her from the responsibility of her own neglect. Where a party knows the amount of the premium, knows when it is due, and where there is no question as to whom it should be paid, we fail to see how a failure to receive notice from the insurer stating when the premium is due can be said to be the proximate cause of the insured's failure to pay within the thirty-day period of grace.

"Courts have always set their faces against an insurance company which, having received its premiums, has sought by technical defenses to avoid payment, and in like manner should they set their faces against an effort to exact payment from an insurance company when the premiums have been deliberately left unpaid." *Mutual Life Ins. Co.* v. *Hill* (1904), 193 U. S. 551, 48 L. Ed. 788.

The verdict, in our judgment, is contrary to law.

Appellant complains of instruction No. 1, given by the court on its own motion.  By this instruction, the court informed the jurors that they were the exclusive judges of the facts proved and of the weight and credit to be given to the testimony of each witness; that in arriving at the weight and credit of the witnesses, they had the right to take in consideration their actions and demeanor while on the witness stand, their willingness or unwillingness to testify, their means of knowing the things about which they testified, the reasonableness or unreasonableness of their testimony and from *"these facts determine what has been proved."*  Appellant objects to the italicized expression and says it permitted the jury to consider matters outside of and beyond the evidence.  While the instruction is not a model, it is not subject to the objection urged against it.

Instruction No. 5, given at the request of appellee, was to the effect that if the jury found appellee had paid the premiums due January, 1917, and January, 1919, twice, there could be no forfeiture of the policy for failure to pay the premiums due January 1, and February 1, 1922.  When the policy lapsed in 1920, because of non-payment, appellee made no claim that she theretofore had made any double payment.  She testified that she paid all of the premiums which were paid; that on August 16, 1920, she mailed appellant a check for the premiums due August 1, and September 1, 1920.  A letter signed "John & Ellen Bartlett," doubtless written by appellee, was mailed to appellant August 16, 1920, enclosing a check for the premiums for August and September, in which appellee stated she had gotten behind in her payments because of sickness.  Appellee and her husband, at that time, in their applications for reinstatement of the policy, admitted the policy had lapsed because of non-

payment of premiums. In view of the evidence showing that the policy had lapsed in 1920, and had thereafter been reinstated on application of appellee and her husband, when there was no claim of any double payment of premiums, and no claim of error at that time, and when there was no claim by appellee in her testimony or in the testimony of any other witness that she made any double payments, it is clear there was no evidence to warrant the giving of this instruction or to sustain a finding that there had been any double payment of premiums.

Instruction No. 6, given at the request of appellee, told the jury that if appellant sent notices each month during the life of the policy and that such notices contained directions that they should be returned with the payment of the premiums, it might find that appellant was estopped from claiming the policy was forfeited by reason of the non-payment of the premiums for January and February, 1922, if it found that notices of the January and February premiums were not sent and were not received by appellee and that she relied upon the sending of such notices for the payment of the premiums due on the policy. The evidence, without conflict, shows that all payments on the policy up to and including the installments for September, 1914, were made to an agent who called on appellee each month and collected the monthly premiums and gave appellee a receipt. Some of these receipts were introduced in evidence. There was no reference in any of them to any notice. There is nothing in any of them to indicate that any notice had been given or that any notice was to be returned with the payment of the premiums. The only notice introduced in evidence was a notice from appellant stating that the *first monthly* premium on the policy would be due September 1, 1913, and which contained a statement that that notice should be returned

with the remittance. No other notice is to be found in the record. Neither is there any evidence that any of the other notices mailed or given to appellee contained any such statement. The record is absolutely silent as to the contents of all notices other than the one given in September, 1913. Appellee makes no claim that she was under the impression that it was necessary for her to receive a notice before she could pay the monthly installments or that she labored under the belief that it was necessary for her to return the notice when she made her remittance. Appellant, however, has not objected to this instruction on the ground that it is not supported by the evidence, but since the cause must be reversed for other reasons, we deem it advisable to call attention to the condition of the evidence as to the provision of the notices referred to in the instruction, so as to avoid error in case of another trial.

Appellant also insists that this instruction is in conflict with instructions seven, eight and sixteen given at its request. Instruction No. 7 after calling attention to the provision in the policy to the effect that notice of each and every payment on the policy was given and accepted by the delivery and acceptance of the policy and that any further notice was waived, told the jury that, if it found that appellant, up to and including the month of December, 1921, regularly delivered to appellee a notice of the due date of each premium prior to the due date, but failed to give such notice of the premium due January 1 and February 1, 1922, such facts alone would not excuse the insured from paying the premiums within the thirty-day period of grace, and that such failure would not estop appellant from insisting that the policy had lapsed. By the eighth instruction, the jury was told that appellant was not required to give notice of any premium to become due, and that the failure to give notice of the

premiums due January 1 and February 1, 1922, did not excuse the insured from their failure to pay such premiums when due or within thirty days thereafter. The sixteenth instruction told the jury that the provision of the policy referred to in the seventh-instruction did not require appellant to give notice and did not excuse appellee from the payment of the premiums when due or within thirty days thereafter. Appellant's defense, as disclosed by its answer, was that the premium due January 1, 1922, was not paid when due or within the period of grace. Appellee, in reply, sought to avoid the defense set up in the answer by alleging a custom of giving notice during the life of the policy up to and including November, 1921, of the fact that a premium was due the first of the next month and that it failed to give notice in December, 1921, of the premium falling due January 1, 1922. There was no claim in the pleadings that appellant was estopped by reason of any statement in the notice that such notice should be returned with the remittance as was referred to in the sixth instruction given at the request of appellee. The last instruction was not within the issues and should not have been given. We fail to see how the jury could have returned a verdict for appellee if it had followed said instructions Nos. 7, 8 and 16, unless it was misled and confused by the giving of said instruction No. 6, which was not within the issues, or by said instruction No. 5, the giving of which was not justifiable under the evidence.

Appellant also insists that the court erred in refusing to give an instruction directing the jury to return a verdict in its favor. Since the cause has to be reversed for other reasons, we do not deem it necessary to pass upon this contention, as the evidence on another trial may be materially different from that given on the first trial.

The judgment is reversed, with directions to sustain the motion for a new trial and for further proceedings consistent with this opinion.

Nichols, J., concurs in results.

### ON PETITION FOR REHEARING.

McMAHAN, J.—Appellee, in support of her petition for rehearing, assails the original opinion and our statements therein that the only policy sued on was the policy issued by the Western company, and that the American policy not being introduced in evidence, we did not know the provisions thereof.

On page four of her original brief, after setting out the application to the Western company for a policy under the terms of the reinsurance contract, appellee said that *the policy sued on was issued upon said application,* thus indicating her understanding at that time. She now, for the first time, insists that the policy sued on in the second paragraph of complaint was the policy issued by the American company. An examination of the record conclusively shows that appellee, as well as appellant and the trial court understood that both paragraphs of complaint were founded upon the Western policy. Appellant, in its second and third paragraphs of answer to first paragraph of complaint, alleged a default of more than thirty days in the payment of premiums. Appellee, in her reply to this answer, alleged that, by the terms of the policy sued on, she had thirty days' grace in which to pay the premiums and set out the clause of the policy giving thirty days' grace. Later, she filed a second paragraph of complaint, and in the second paragraph of her reply to the answer to the second paragraph of complaint, she sought to avoid the failure to pay the premiums within "the thirty days of grace given for the payment of each monthly premium," by alleging

certain facts which she claimed estopped appellant from insisting upon a forfeiture because of her failure to pay within the thirty-day period. In the third paragraph of reply, she alleged that, "by the terms of *the policy herein sued upon premiums were due on the first of each month and that a period of grace of thirty days* was given in which to pay said premiums" (our italics) and conceded that the premiums due January 1, and February 1, were not paid within the "period of grace prescribed in the said policy." In the fourth paragraph of reply, she also alleged that, "by the terms of the policy sued upon payment of premiums were required to be made on the first day of each calendar month and that a period of thirty days' grace was provided within which to make said payment of premiums," and she sought to avoid forfeiture because of her failure to pay within the thirty-day period, by reason of the fact that she sent a check to appellant February 4, in payment of the premium due January 1, and that appellant had retained the check so sent. If any further proof is needed to show that appellee, appellant and the trial court understood that the only policy sued on was the Western policy, we might look at the instructions given at the request of the parties. In instruction No. 1, given at the request of *appellee,* the jury was informed that the complaint was in two paragraphs to recover on account of "a policy of insurance"; that she and her husband had surrendered the American policy and procured "the policy sued upon in this action"; that appellant had by answer alleged a failure to pay the premiums within the thirty-day period of grace as required by the policy and that appellee in her reply had alleged facts to avoid forfeiture by reason of her failure to pay the premiums within the thirty-day period. In instructions Nos. 5, 6 and 7, given at her request, she refers to "the policy" sued on. The court,

at the request of appellant, instructed the jury that "the policy sued" on contained the express condition that a "grace period of thirty days" was granted for payment of premiums, and that a failure to pay a premium within such time rendered "the policy of insurance in suit" void, and that if appellee had failed to pay within the thirty-day period, she could not recover, unless appellant had waived or was estopped from treating the policy as void.    Instruction No. 3, given at request of appellant, told the jury that the policy sued on contained a provision giving thirty days' grace within which to pay the premiums, and, in at least ten other instructions, the jury's attention was called to the thirty-day period of grace in the policy, and in two instructions, the court directly told the jury that if it found the American policy had been surrendered and "the policy in suit" executed by the Western company, appellee's rights were governed by the Western policy. Appellee tendered no instruction wherein it was claimed she had the right, under the provisions of the American policy, to a grace period of sixty days, and no reference to a claim that she had a right to pay within sixty days was made in any instruction given by the court.    Appellee, appellant and the court, having adopted the theory that the Western policy was the only policy sued on, that theory will be adopted and adhered to on appeal.

In her original brief herein, appellee made the statement that the American policy issued to her and her husband contained a provision giving them a grace period of two months for the payment of premiums.    No reference was made to the page of the record where such evidence could be found.    In her brief on rehearing, she says that a "skeleton copy" of the American policy issued to her and her husband was introduced in evidence, and gives the page of the record where she

says such alleged copy can be found. An examination of the record shows that the reinsurance contract between the receiver of the American company and appellant, and certain exhibits which were referred to in the contract and made a part thereof were introduced in evidence. Following these exhibits, appear what seem to be "skeleton" forms of two insurance policies. These forms are not mentioned in the reinsurance contract and are not made a part thereof by reference or otherwise. The reinsurance contract makes reference to exhibits A, B, C, D and E, and makes them a part thereof. The "skeleton" forms referred to are not a part of the reinsurance contract, and there is nothing in the record to show they were or were not introduced in evidence, or that neither of them was or purported to be a copy of the original policy issued by the American company to appellee and her husband. Exhibit B, which is filed with and made a part of the second paragraph of appellee's complaint, is alleged to be a copy of the reinsurance contract. The so-called "skeleton" forms do not there appear as a part of that contract, or as a part of the complaint, and notwithstanding the statement of appellant's counsel that these "skeleton" forms are certified to by the commissioner of insurance, the record does not so show. The certificate of the insurance commissioner precedes the copy of the contract and makes no reference to the alleged copies of the American policy. In order to verify the correctness of our position, we have examined the original reinsurance contract on file in the office of the insurance commissioner and we find the copy thereof which is made a part of the second paragraph of complaint is an exact copy of the original, and that the alleged skeleton forms are not attached to or made a part of the contract.

Appellee concedes that the policy sued on in the first paragraph of complaint is the Western policy, and in

the second paragraph of her complaint, she alleges that she and her husband made application to appellant for a policy of insurance, and that, "in accordance with said application, the said defendant executed to the plaintiff and said John Bartlett, the *policy of insurance sued upon,* (our italics) a copy of which is attached hereto, and made a part hereof and marked Exhibit 'A' and attached to the first paragraph of this complaint." Exhibit "A," thus referred to as the policy sued on, is a copy of the Western company policy.

We adhere to the statement in the principal opinion that the only policy sued on is the policy issued by appellant; that there is nothing in the record showing that such policy is not identical in form with the American policy; that the policy issued by the American company was not introduced in evidence, and that we do not know what its provisions were.

Other reasons are urged in support of the petition for a rehearing, but they are based upon a mistaken idea of the facts as disclosed by the record, and we do not deem it necessary to further extend this opinion by discussing them, although we have given each of them painstaking consideration.

Petition for rehearing denied.